# 23-0144-cv

## United States Court of Appeals

*for the*

## Second Circuit

TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC,
AMLQ HOLDINGS (CAY), Ltd.,

*Petitioners-Appellees,*

— v. —

TERRA TOWERS CORP., TBS MANAGEMENT, S.A.,

*Respondents-Appellants,*

DT HOLDINGS, INC.,

*Cross-Claimant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR RESPONDENTS-APPELLANTS

JUAN J. RODRIGUEZ
LUKE T. JACOBS
CAREY RODRIGUEZ, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 356-5481

*Attorneys for Respondents-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Telecom Construction Panamerican Limited (BVI), a private corporation, is the parent corporation of Respondents-Appellants Terra Towers Corp. and TBS Management S.A. Telecom Construction Latin America Limited (BVI), a private corporation, is the parent corporation for Appellant DT Holdings, Inc. No publicly held corporation holds 10% or more of any of the Appellants' stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ......................................................................iv

JURISDICTIONAL STATEMENT ...............................................................1

ISSUES PRESENTED.............................................................................2

INTRODUCTION .................................................................................3

STATEMENT OF THE CASE....................................................................4

    A.    The Shareholders Execute the Governing Agreements to Form the Company...............................................................4

    B.    The Sale Process of the Company Under the Shareholders Agreement ...................................................................5

    C.    Peppertree Proposes a Sale of the Company to Torrecom...................8

    D.    Three Months Later, Peppertree Proposes a Sale on the Open Market..................................................................9

    E.    Arbitration Commences ................................................9

        1.    Peppertree's Initial Demand for Arbitration.............................9

        2.    Peppertree and AMLQ Amend Their Demands for Arbitration ...................................................................10

        3.    The Panel Rules New York Substantive Law Governs ............10

        4.    The Panel Suggests a Phased Approach to the Arbitration .................................................................11

        5.    Terra Seeks Discovery to Support Its Affirmative Defenses ..................................................................12

        6.    The Panel is Briefed on New York Law of Specific Performance ............................................................12

        7.    After the Parties had Submitted Their Briefs, the Panel Sought Further Clarification Regarding New York Law on Specific Performance ........................................13

8. During Oral Argument the Panel for the First Time Suggests that the Issue of Specific Performance May be Controlled by AAA Rule R-47(a) .........................................14

9. The Panel Disregards New York Law and Orders the Sale of the Company .................................................................15

10. The Panel Awards Injunctive Relief on a Collateral Employment Issue in a Pair of Rulings that Also Warrant Vacatur ...................................................................15

F. Appellees Petition to Confirm the FPFA and Appellants Cross-Petition to Vacate the FPFA ....................................17

STANDARD OF REVIEW ..............................................................18

SUMMARY OF ARGUMENT .........................................................19

ARGUMENT ....................................................................................20

I. The Federal Arbitration Act Requires Fundamental Fairness ............20

A. The Arbitration Proceeding in This Case Was Fundamentally Unfair ................................................24

1. It Was Fundamentally Unfair to Conduct the Proceeding as If New York Law Controlled and Then Disregard New York Law ......................................24

2. The Panel Applied the Wrong Law ...............................26

B. Specific Performance of a Contract is a Substantive Remedy Governed by New York Law ......................................26

C. It Was Fundamentally Unfair to Deny Appellants Discovery to Substantiate Their Defenses to Specific Performance ................................................................28

II. The November 15 Order and March 15 Order attempt Should Also Be Vacated as Beyond the Arbitration Panel's Jurisdiction ...................................................................31

A. The Interim Orders Are Subject to Judicial Review ................31

B. The Interim Orders Exceeded the Tribunal's Jurisdiction ..............................................................33

CONCLUSION ................................................................................34

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*187 Concourse Assocs. v. Fishman*,
399 F.3d 524 (2d Cir. 2005) ...................................................................18, 23

*Abbott Labs. v. Feinberg*,
506 F. Supp. 3d 185 (S.D.N.Y. 2020) ..........................................................27

*C.E. Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*,
2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012) .............................................14

*Chevron Trans. Corp. v. Astro Vencedor Compania Naviera, S.A.*,
300 F. Supp. 179 (S.D.N.Y. 1969) ...............................................................22

*Cofinco, Inc. v. Bakrie & Bros., N.V.*,
395 F. Supp. 613 (S.D.N.Y. 1975) ...............................................................22

*Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*,
46 F. Supp. 3d 327 (S.D.N.Y. 2014) ............................................................32

*Fed. Deposit Ins. Corp. v. Murex LLC*,
500 F. Supp. 3d 76 (S.D.N.Y. 2020) ............................................................27

*Home Indem. Co. v. Affiliated Food Distribs., Inc.*,
No. 96 Civ. 9707 (RO), 1997 WL 773712
(S.D.N.Y. Dec. 12, 1997) ................................................................... 20-21, 22

*Hoteles Condado Beach, La Concha and Convention Center v.
Union de Tronquistas Local 901*,
763 F.2d 34 (1st Cir. 1985)............................................................................22

*Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*,
232 F.3d 383 (4th Cir. 2000) ........................................................................22

*InterChem Asia 2000 Pte. Ltd. v. Ocean Petrochems. AG*,
373 F. Supp. 2d 340 (S.D.N.Y. 2005) ..........................................................26

*Iran Aircraft Indus. v. Avco Corp.*,
980 F.2d 141 (2d Cir. 1992) ...................................................................23, 24

*JLNW, Inc. v. Nat'l Ret. Fund*,
No. 17-CV-5095 (AJN), 2018 WL 4757953 (S.D.N.Y.
Sept. 28, 2018)........................................................................................32, 33

iv

*Matter of Arbitration Between Melun Indus., Inc. and Strange*,
    898 F.Supp. 990 (S.D.N.Y.1990) ....................................................23

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
    790 F.2d 280 (2d Cir. 1986) ........................................................31

*Orion Shipping & Trading Co. v.*
    *Eastern States Petroleum Corp. of Panama, S.A.*,
    312 F.2d 299 (2d Cir. 1963) .............................................23, 31, 33

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
    372 F.3d 488 (2d Cir. 2004) ........................................................29

*Petrella v. Metro-Goldwyn-Meyer, Inc.*,
    572 U.S. 663 (2014)....................................................................27

*Petrello v. White*,
    No. 01-CV-3, 082 (DRH), 2007 WL 2276300 (E.D.N.Y. 2007)................29

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
    497 F.3d 133 (2d Cir. 2007) ....................................19, 21, 23, 24

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
    157 F.3d 174 (2d Cir. 1998) ........................................................32

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) ..............................................20, 21, 22

*Trade & Transp., Inc. v. Nat'l Petroleum Charterers Inc.*,
    931 F.2d 191 (2d Cir. 1991) ........................................................33

*Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*,
    954 F.3d 567 (2d Cir. 2020) ........................................................23

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007) ........................................................32

**Statutes & Other Authorities:**

9 U.S.C. §§ 1–16................................................................................20

9 U.S.C. § 10....................................................................................21

9 U.S.C. § 10(a)................................................................................21

9 U.S.C. § 10(a)(3)............................................................................22

9 U.S.C. § 10(a)(4)........................................................................18, 23

v

9 U.S.C. § 203 ...................................................................................1

28 U.S.C. § 1291 ...............................................................................1

AAA Commercial Rule R-32...........................................................11

AAA Commercial Rule R-32(a)..................................................27, 28

AAA Commercial Rule R-33...........................................................11

AAA Commercial Rule R-47......................................................25, 26

AAA Commercial Rule R-47(a) .............................................14, 15, 25

Thomas H. Oehmke, Commercial Arbitration § 144:3 (Jan. 2023 ed.) ..................22

# JURISDICTIONAL STATEMENT

Respondents-Appellants Terra Towers Corp., TBS Management, S.A., (together, "Terra") and DT Holdings, Inc. ("DTH") (collectively, "Appellants") cross-petitioned in the District Court to vacate an arbitration award that ordered the sale of a company Terra co-owns with LATAM Towers, LLC, Telecom Business Solution, LLC (together "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ") (collectively, "Appellees"), and two interim awards which ordered non-parties to rehire and publicly reassociate with certain individuals. The District Court had subject matter jurisdiction pursuant to the New York Convention, 9 U.S.C. § 203. [ECF 27 ¶ 8].

On January 19, 2023, the District Court entered judgment for Appellees confirming the award. SPA21. Appellants filed a timely notice of appeal on January 31, 2023, A1816, and amended their notice of appeal on February 17, 2023. A1817. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the District Court erred in denying a petition to vacate an arbitral award of specific performance in a dispute governed by New York law, where the arbitration panel refused to consider New York defenses to specific performance and denied Appellants any discovery into those defenses?

2.      Whether the District Court erred in concluding that arbitral orders which purport to dictate the employment relationships of non-parties to the arbitration were interim orders not subject to judicial review, as opposed to a partial award, which is reviewable?

3.      Whether the District Court erred in concluding that the arbitration panel did not exceed its authority by ordering a party—which it had jurisdiction over—to compel its affiliated companies—which the Panel did not have jurisdiction over—to take certain actions?

**INTRODUCTION**

The parties to this appeal are shareholders in a company which owns telecommunications towers throughout Latin America through its local subsidiaries. The shareholders agreement establishes a procedure for the sale of the company upon request after a five-year lock-up period, subject to certain conditions, procedures, and limitations. A dispute arose when Appellees purported to exercise their right to request a sale, but Appellants regarded the request as procedurally defective and substantively deficient. Appellees instituted an arbitration action pursuant to the dispute-resolution terms of the agreement.

The primary issue in the arbitration was whether to award specific performance of the requested sale of the company. Because the agreement deems New York law applicable, Appellants asserted numerous New York defenses to specific performance, and the parties argued at length about those defenses. The arbitration panel, however, refused to allow Appellants discovery on those defenses, and awarded specific performance to Appellees pursuant to the arbitrators' supposed equitable powers under the commercial arbitration rules of the American Arbitration Association ("AAA"), disregarding defenses to specific performance under New York law.

Appellants bring this appeal to secure their right to a fundamentally fair arbitral proceeding. In the present case, that means applying New York law as

3

guaranteed by the parties' agreement, as opposed to the completely standardless and unbounded equitable discretion that the arbitrators claimed for themselves and exercised. It means permitting Appellants discovery to support their defenses under New York law. And it means checking the arbitrators' attempt to exercise jurisdiction over non-parties.

The decision confirming the arbitral award should be reversed, and the arbitral award should be vacated with instructions to conduct the proceeding in accordance with this Court's opinion.

## STATEMENT OF THE CASE

### A.    The Shareholders Execute the Governing Agreements to Form the Company

Continental Towers LATAM Holdings Limited (the "Company") is a company incorporated in the British Virgin Islands. A28. The Company owns and operates telecommunications towers across Latin America and generates revenue by renting space on those towers to service providers. *See* A42 (SHA § 3.01(a)).

The Company was formed in 2015 to facilitate certain investments in the management of existing towers and construction of additional towers. Terra was the majority shareholder, and Peppertree and AMLQ held a minority stake. A27-80 ("SHA"). In essence, Appellants were the preexisting owners of a tower business in Latin America, while Appellees were the new investors. AMLQ is a funding vehicle financed and wholly owned by Goldman, Sachs & Co. ("Goldman"). A28.

4

The parties' relationship is governed by the shareholders agreement dated October 22, 2015. A27-80.

Simultaneously with the SHA, the Company entered into an agreement ("the Development Agreement") with Terra and DTH, which primarily governs DTH's role constructing telecommunication towers for the Company. *See* A275-284. The Company has few actual employees and relies primarily on subsidiaries of DTH to provide "back-office" services. The Company and DTH each have numerous subsidiaries, each of which is dedicated to operations in a single country. For each country, the Company's subsidiary and DTH's subsidiary entered into a separate agreement (the "Service Agreement") with their country's counterpart.[1] *See*, *e.g.*, A929-938.

### B.    The Sale Process of the Company Under the Shareholders Agreement

Section 5.04(b) of the SHA, reprinted in pertinent part below, permitted the Terra and Peppertree shareholders to request a sale of the Company after five years of operation, the "Lock-Up Period." A56 (§ 5.04(b)). There were two paths a potential sale of the Company could take. Under section 5.04(b)(i), the proposing shareholder could present an offer from an "unaffiliated Third Party Purchaser" to

---

[1] The Service Agreements are governed by their respective countries' local laws and contain separate arbitration provisions, none of which confer jurisdiction to the American Arbitration Association. A937 §§ 12.4, FOURTEEN.

5

purchase all or substantially all of the shares in the Company. *Id*. (§ 5.04(b)(i)). The non-proposing shareholder then had the option to reject the offer presented if it provided an expert opinion from a reputable investment bank that the offer was below market value. *Id*. Under section 5.04(b)(ii), if no offer was presented, or in the event a non-proposing shareholder rejected an offer under section 5.04(b)(i), the proposing shareholder could request the Company retain an investment bank to facilitate a sale on the open market. *Id*. (§ 5.04(b)(ii)). If the sale followed a rejection under section 5.04(b)(i) and yielded a lower amount than the original offer presented, the proposing shareholder was entitled to the difference. *Id*.

Specifically, section 5.04(b) states that after certain conditions have been met:

> (A) either the Initial A Shareholders or the Initial B Shareholders in the case of sub-section (i) or (B) the Initial B Shareholder in the case of sub-section (ii) – (iii) (such shareholders, the "Proposing Shareholders") may request, upon written notice to the other Initial Shareholders and the Company (the "Proposed Sale Notice"), a sale of all or substantially all of the Company's assets or all or substantially all of the Shares in the Company (in one or more transactions) to an unaffiliated Third Party Purchaser (an "Approved Sale").

> (i) If the Proposing Shareholders have already procured or received an offer from an unaffiliated Third Party Purchaser to purchase the assets or Shares of the Company (a "**Proposed Offer**"), the Proposed Sale Notice shall disclose in reasonable detail the identity of the prospective purchaser and the proposed terms and conditions of the Proposed Offer. The Initial A Shareholders or the Initial B Shareholders, as applicable,

(the "**Objecting Shareholders**") may reject such Proposed Offer within thirty (30) calendar days of delivery of the Proposed Sale Notice by providing the Company with an opinion from an independent and reputable investment bank with experience in the industry and a cross-border practice (an "**Investment Bank**"), retained at the sole expense of the Objecting Shareholders, stating that the value of the proposed transaction is materially less than comparable transactions in the industry and the Territory; *provided that*, if such opinion is provided, the provisions of Section 5.04(b)(ii) shall apply. In the event that no such opinion is provided by the expiration of such 30 day period, each Shareholder shall vote for, consent to and raise no objections against such Approved Sale and take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by the Proposing Shareholders.

(ii) If the Proposing Shareholders have not already procured an offer from an unaffiliated Third Party Purchaser or if an opinion has been provided by an Objecting Shareholder pursuant to Section 5.04(b)(i), the Company shall, within thirty (30) calendar days of receipt of a Proposed Sale Notice, retain an Investment Bank to facilitate an Approved Sale and each Shareholder shall vote for, consent to and raise no objections against such Approved Sale and take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by the Proposing Shareholders. In the event that the consideration to be received for the Shares or assets of the Company upon the consummation of such Approved Sale is less than the Proposed Offer provided by the Third Party Purchaser pursuant to Section 5.04(b)(i), the difference between the amount of the Proposed Offer and the purchase price of the Approved Sale shall be deducted from the proceeds otherwise due to the Objecting Shareholders.

A56.

### C.     Peppertree Proposes a Sale of the Company to Torrecom

In November 2020, shortly after the expiration of the Lock-Up Period,
Peppertree sent a non-negotiable proposal from Torrecom Partners LP
("Torrecom") to purchase the Company (the "Torrecom Offer"). A818 ¶ 10.
Facially, the terms of the Torrecom Offer ran afoul of the explicit terms of the
SHA. A1105-1106. It contained provisions that would have barred Terra from
building competing towers for a five-year period and acquiring interest in the land
underneath Torrecom's towers in perpetuity. *See id*. Both provisions violated
section 5.04(b)(iv)(C) of the SHA. A57.

Terra suspected the Torrecom Offer also violated the prohibition in section
5.04(b)(i) of the SHA against sale of the Company to an affiliated Third Party
Purchaser. *See* A56 (§ 5.04(b)(i)); *see also* A1000. Numerous red flags suggested
Appellees intended to maintain an ongoing interest in the Company. Goldman
offered to finance the transaction; Peppertree's outside counsel drafted the entirety
of Torrecom's offer; the offer appointed a Peppertree director as the sole seller-
representative of the Company; and the offer was negotiated during the Lock-Up
Period without Terra's knowledge—a separate and independent breach of the
SHA. A1813-1814 ¶ 16.

On November 24, 2020, Terra rejected the Torrecom Offer and attached the
required opinion letter from a reputable investment bank, UBS. A818-819 ¶ 11.

8

**D.**     **Three Months Later, Peppertree Proposes a Sale on the Open Market**

Peppertree sent another proposed sale notice on January 19, 2021 (the "January 19 Notice") without providing an attached offer. A820 ¶ 15. Under section 5.04(b)(ii) the deadline for the Company to appoint an investment bank was February 18, 2021. *See* A56 (§ 5.04(b)(ii)).

The week following Peppertree's January 19 Notice, Terra presented Appellees with an offer to redeem their shares in the Company, at an all-in net price substantially similar to the Torrecom Offer (the "Redemption Offer"). A820-21 ¶ 16.

**E.**     **Arbitration Commences**

**1.**     **Peppertree's Initial Demand for Arbitration**

On February 2, 2022, Peppertree rejected Terra's Redemption Offer and filed its demand for arbitration seeking, *inter alia*, specific performance of the Torrecom Offer. A165 ¶ 185. Peppertree did not seek enforcement of the January 19 Notice. *See* A162-177 ¶¶ 167, 173, 176, 185-187, WHEREFORE ¶ A.

Section 8.14 of the SHA permits a party to seek arbitration of any dispute that remains unresolved forty-five days after delivery of a notice of dispute. A76 (§ 8.14). In filing the February 2 arbitration demand, Peppertree cited two "Dispute Notices": one on October 23, 2020, and another on November 5, 2020. A158-159. No additional Dispute Notices were ever sent to Terra.

Terra promptly filed an Answer, which raised—among others—Unclean Hands, Wavier, and Equitable Estoppel as affirmative defenses to Peppertree's right to force a sale of the Company, A303-383 ("Terra's First Answer") ¶¶ 235-240. Terra also brought counterclaims for breach of contract and breach of fiduciary duty. A384-421 ("Terra's First Counterclaim"), pp. 115-118.

### 2. Peppertree and AMLQ Amend Their Demands for Arbitration

Five months after Peppertree's initial demand, Peppertree and AMLQ filed amended demands for arbitration. A422-541 ("AMLQ Amended Demand"); A542-779 ("Peppertree Amended Demand"). For the first time, Peppertree and AMLQ sought enforcement of the January 19 Notice and damages if the sale was for less than the Torrecom Offer, pursuant to section 5.04(b)(ii).[2] A442-449; A598-617. Neither of Peppertree's nor AMLQ's amended demands sought a sale of the Company unassociated with the Torrecom Offer. *Id.*

### 3. The Panel Rules New York Substantive Law Governs

Section 8.15 of the SHA provided for arbitration of disputes by a three-member panel in New York according to the AAA's commercial arbitration rules. A76. In accordance with section 8.15, each party selected an arbitrator, and a rank

---

[2] In pertinent part, section 5.04(b)(ii) reads: "[i]n the event that the consideration to be received for the Shares or assets of the Company upon the consummation of such Approved Sale is less than the Proposed Offer provided by the Third Party Purchaser pursuant to Section 5.04(b)(i), the difference between the amount of the Proposed Offer and the purchase price of the Approved Sale shall be deducted from the proceeds otherwise due to the Objecting Shareholders."

and strike procedure determined the panel's chair. Shortly after the panel's formation, the parties submitted proposed comments to the procedural template of the arbitration. *See* A780-797. It was undisputed that New York substantive law governed claims arising from the SHA. A75 ("Governing Law. This Agreement will be governed and construed in accordance with the Laws of the State of New York, United States without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction)."); *see also* A791-792; A956-957; A976.

### 4. The Panel Suggests a Phased Approach to the Arbitration

Upon the panel's full appointment, the panel requested the parties brief the issue of a phased approach to the arbitration. A951-952. Primarily, this meant severing the issues of specific performance of the sale of the Company and an issue concerning the Company's ability to continue tower development. *Id.* Terra opposed severing the issues because neither issue could be adequately resolved without an evidentiary hearing into Terra's affirmative defenses and counterclaims. A969-973; A798-807.

The panel decided to move forward with the phased approach. A808-809. Its order stated that it did not view phase 1 as a "Dispositive Motion process under Rule R-33", but rather, "an exercise of our discretion under Rule R-32". *Id.*

11

### 5.  Terra Seeks Discovery to Support Its Affirmative Defenses

A few days after the panel's decision to phase the arbitration, Terra sought leave to serve discovery requests on Peppertree and AMLQ. Terra's requests attached a proposed Redfern schedule, laid out thirteen requests for documents, cited the affirmative defense(s) each corresponded to, and buttressed each request with a detailed explanation for its need. A999-1012.

The panel rejected Terra's request for leave to serve discovery requests into its affirmative defenses. A1014-1017. It declared that the first phase was only concerned with "the legal sufficiency of pleaded affirmative defenses to the specific performance…." *Id.*

### 6.  The Panel is Briefed on New York Law of Specific Performance

The panel received two rounds of briefing from each party discussing New York law on specific performance and applicable defenses. The briefing focused on whether Peppertree and AMLQ could satisfy the standards for specific performance under New York law. This made sense, as the SHA is a contract governed by the substantive law of New York. Throughout their briefing on this issue, all parties consistently cited the specific performance law articulated by New York state and federal courts. *See, e.g.*, A1043-1050; A1103-1116; A1722-1740; A1766-1778. As Terra advised the panel (without contradiction), the contractual

12

remedy of specific performance is a "substantive right" governed by the substantive law the parties chose—New York law. A1764-1766.

Going into oral argument on phase 1, the parties agreed on one thing: that New York law controlled the specific performance claims.

> **7.    After the Parties had Submitted Their Briefs, the Panel Sought Further Clarification Regarding New York Law on Specific Performance**

The parties submitted two rounds of briefing which discussed the New York law of specific performance and defenses to. A1019-1076 (Peppertree/AMLQ Memorial); A1078-1127 (Terra Memorial); A1710-1755 (Peppertree/AMLQ Reply); A1757-1796 (Terra Reply). The panel then followed up on the parties' briefs with additional questions on how New York courts treat similar contractual stipulations and traditional principles of equity. The Panel's first question asked:

> What is the effect of Section 8.12 of Shareholder Agreement on whether Claimants are required to establish all the traditional elements of entitlement to equitable relief.

A1798; A1808.

On its face, the panel's question assumed that the claimants would be required to establish all the elements of entitlement to equitable relief unless section 8.12 of the SHA provided otherwise. The remainder of the questions were unrelated to the question of equitable relief. *See* A1798-1804.

13

**8.     During Oral Argument the Panel for the First Time Suggests that the Issue of Specific Performance May be Controlled by AAA Rule R-47(a)**

After two rounds of briefing on the issue of specific performance, plus submissions responsive to the panel's additional questions, the panel held oral argument. *See* A1202-1591 (Transcript of Dec. 1 Hearing).

In the middle of Appellees' opening argument, which focused exclusively on New York and Second Circuit law on specific performance, the panel suggested it could grant specific performance without considering New York law. A1230-1233. For the first time, the panel introduced a district court case suggesting that arbitrators do not exceed their power when granting equitable relief that would not have been available from a court. A1230-1231 (citing *C.E. Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012)). The panel acknowledged the parties had "no particular reason" to know about the case, but that both sides should "retrieve it and during a break you can read." *Id.* (29:21-30:11).

After a break, the panel questioned Terra's counsel about the applicability of *C.E. International Resources* to the issue of whether to grant specific performance of the sale of the Company. A1338-1361. Specifically, the panel inquired whether AAA Rule R-47(a) gives arbitrators discretion to employ their own version of equity, or whether they are bound to follow the equitable principles of New York

14

courts. *Id.* Terra's counsel argued that New York law on specific performance applied both under the SHA's choice-of-law clause and because the alternative was unbridled discretion. A1356-1358. As counsel succinctly put it, "what else are you going to look at?" A1361 (160:2-6).

> ### 9. The Panel Disregards New York Law and Orders the Sale of the Company

On February 24, 2022, the panel rendered a partial award which granted Appellees' request for specific performance of the sale of the Company. A811-860 (the "FPFA"). The FPFA ordered Terra to cause its board members of the Company to (1) raise no objection to an investment bank proposed by Appellees' board members, and (2) proceed with the January 19 Notice to sell the Company on the open market. A852 ¶72(ii)-(iii). The panel found that while the affirmative defenses raised by Terra may constrain a New York court in the exercise of its equitable power, they do not constrain the equitable power of arbitrators. A821-822 ¶¶ 19-20.

> ### 10. The Panel Awards Injunctive Relief on a Collateral Employment Issue in a Pair of Rulings that Also Warrant Vacatur

In the midst of the phase 1 briefing, independent counsel for the Company wrote to the panel, claiming that Jorge Gaitan ("Gaitan") and Carol Echeverria ("Echeverria") had been subject to harassment and were constructively (or actually) terminated from their positions in the Company and DTH. A1128-1131.

15

Peppertree filed an emergency application for interim relief seeking to enjoin Terra and its affiliates from harassing Gaitan and Echeverria, and to require the reinstatement of their positions in the Company. A1703 ¶ 10.

The panel held an evidentiary hearing on the matter and then on November 12, 2021, issued an injunction against DTH and Terra "requiring that DTH immediately restore Jorge Gaitan and Carol Echeverria to the Company positions they occupied as of March 19, 2021…." A1185-1188 (the "November 12 Order").

Terra/DTH immediately moved for clarification of the panel's November 12 Order because (1) Jorge Gaitan was never removed from his position at the Company, and (2) Carol Echeverria had never held any position at the Company. A1190-1191. In actuality, Gaitan no longer held his positions in DTH's subsidiaries Proyectos Terrestres, S.A. ("Proyectos") and was no longer an independent contractor for Desarrolladora de Tierras, S.A. ("Desarrolladora"), and Echeverria was also no longer an independent contractor for Desarrolladora. *Id.* Both Proyectos and Desarrolladora entered into their own separate agreements with Gaitan and Echeverria, which include their own dispute resolution clauses, neither of which grants authority to the AAA. A880; A894; A908; *see also* A1194-1197, § II(A).

On January 12, 2022, Appellees brought a motion to compel compliance with the November 12 Order because the DTH subsidiaries had not rehired Gaitan

16

and Echeverria. A1680-1681. In addition, Appellees complained that the local subsidiaries of DTH had published public notices that Gaitan and Echeverria no longer held positions within their respective DTH subsidiaries. *Id*. In an order dated March 15, 2022 (A1687-1701 the "March 15 Order") the panel required that DTH specifically cause the DTH subsidiaries in Guatemala, Costa Rica, and Panama, that published these notices, to nullify the notices, and rectify their negative effects. A1693-1694 ¶ 13. In essence the March 15 Order required DTH's subsidiaries to re-hire and publicly re-associate themselves with Gaitan and Echeverria, even though Gaitan and Echeverria had brought lawsuits against their respective employers in the local courts and were demanding severance pay, rather than reinstatement. A1193.

### F. Appellees Petition to Confirm the FPFA and Appellants Cross-Petition to Vacate the FPFA

On March 2, 2022, Appellees filed a petition in the District Court to confirm the FPFA. ECF No. 7. Appellants filed a cross-petition to vacate the FPFA, the November 12 Order, and March 15 Order. ECF No. 27.

Appellants sought vacatur of the FPFA because the panel denied them their right to fundamental fairness. *Id*. ¶¶ 22-24. The panel had instructed the Parties that New York substantive law governed, only to rule that their equitable power as arbitrators was unconstrained by New York law. And the panel made factual

17

findings regarding the sufficiency of Terra's affirmative defenses while denying Terra's requests for discovery relevant to those factual issues.

Appellants sought vacatur of the November 12 Order because it exceeded the panel's power in violation of 9 U.S.C. § 10(a)(4). *Id.* ¶¶ 26-30. The panel purported to exercise jurisdiction over DTH's subsidiaries, who were neither parties to the arbitration nor signatories to the agreements which conferred authority upon the panel, by ordering DTH to cause its subsidiaries to take certain actions. *Id.*

Appellants sought vacatur of the March 15 Order because the panel lacked jurisdiction over DTH's subsidiaries, and because the Panel was *functus officio* and therefore no longer had authority to compel compliance with the November 12 Order. *Id.*

In an order dated January 18, 2023, the District Court granted Appellees' petition to confirm and denied Appellants' petition to vacate. SPA1-20. This appeal followed.

## STANDARD OF REVIEW

When reviewing a district court's refusal to vacate an arbitration award, this Court reviews questions of law de novo and findings of fact for clear error. *See 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005). A court accords great deference to an arbitrator's decision, but the award must remain within the

bounds prescribed by the FAA. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138-139 (2d. Cir. 2007).

## SUMMARY OF ARGUMENT

The FPFA was the product of an objectively unfair process and should be set aside. First, the entire proceeding was conducted with the understanding that the question of specific performance and associated defenses were governed by New York law as specified in the SHA. The parties did not dispute that New York law governed the question of specific performance, and the panel's own orders treated New York law on specific performance as controlling. Yet without warning or any effective opportunity to reargue the issues, the panel discarded New York law and grounded the FPFA in a nebulous power of equity that supposedly affords arbitrators unbridled discretion. Changing the controlling body of law after the parties had already presented their cases rendered the proceeding fundamentally unfair. Second, disregarding New York law on specific performance was not only unfair but wrong. The panel should have applied New York law, not the standardless and unbounded discretion it accorded itself. Applying the wrong body of law is fundamentally unfair. Third, the panel made findings of disputed fact in favor of Peppertree and AMLQ without affording Terra and DTH discovery to substantiate their affirmative defenses. Again, the panel's actions rendered the proceeding fundamentally unfair. Vacatur of the FPFA is warranted.

19

The November 12 Order attempts to control subsidiaries of DTH that were signatories not to the SHA but rather to other agreements governed by local law in the subsidiaries' respective Latin American countries. The panel had no jurisdiction to issue injunctive relief against those subsidiaries. The March 15 Order suffers the same jurisdictional defect, and even if it did not, the panel would have been *functus officio* at that point. The November 12 Order was a final award, and the panel had no power to compel compliance with that award. The November 12 Order and the March 15 Order should be vacated.

## ARGUMENT

The panel in this case violated its authority by refusing to apply New York law as required by the SHA, denying Appellants discovery into their defenses under New York Law, and exercising jurisdiction over non-parties. The decision confirming the arbitration award should be reversed, the award should be vacated, and the case should be remanded for further proceedings.

## I.     The Federal Arbitration Act Requires Fundamental Fairness

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, mandates that every party to an arbitration receive fundamental fairness, and any award born from an unfair process is subject to vacatur by the judicial system. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d. Cir. 1997); *Home Indem. Co. v.*

20

*Affiliated Food Distribs., Inc.*, No. 96 Civ. 9707 (RO), 1997 WL 773712, at *3

(S.D.N.Y. Dec. 12, 1997).

Section 10 of the FAA provides four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a). Additionally, federal courts have recognized a variety of nonstatutory

bases to vacate an arbitration award. *See Porzig*, 497 F.3d at 139. In this circuit,

vacatur is warranted where an arbitration panel "acted in manifest disregard of the

law." *Tempo Shain*, 120 F.3d at 20. A common thread through all of the grounds

for vacatur is an abiding concern that parties be afforded due process: the right to a

fundamentally fair proceeding.

The right to a fundamentally fair proceeding requires, at a minimum, that

parties have a fulsome opportunity to present their case, and that arbitrators attempt

to apply the applicable law in any award. *See e.g.*, *Id.*; *Porzig*, 497 F.3d at 139.

And while the Federal Rules of Civil Procedure and their attendant discovery

procedures do not strictly apply in arbitration, arbitrators nevertheless have an

"affirmative duty . . . to insure that relevant documentary evidence in the hands of

21

one party is fully and timely made available to the other side before the hearing is closed." *Home Indem.*, 1997 WL 773712, at *4 (quoting *Chevron Trans. Corp. v. Astro Vencedor Compania Naviera, S.A.*, 300 F.Supp. 179, 181 (S.D.N.Y. 1969)). "[T]he arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their cases." *Hoteles Condado Beach, La Concha and Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985).

The most common reason courts vacate arbitration awards is for refusing to hear evidence material and pertinent to the controversy in violation of § 10(a)(3). *See*, *e.g.*, *Tempo Shain*, 120 F.3d at 19-20; *Hoteles*, 763 F.2d at 39; *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383 at 390-91 (4th Cir. 2000); *Cofinco, Inc. v. Bakrie & Bros., N.V.*, 395 F.Supp. 613, 614-16 (S.D.N.Y. 1975). Under the same umbrella, a denial of discovery prejudicing a party's ability to present its case violates fundamental fairness. *See Chevron Trans.*, 300 F.Supp. at 181; *Home Indem.*, 1997 WL 773712, at *3-*4. "Whether the arbitrators would have regarded the excluded proof as important and persuasive, or wholly without probative value, is immaterial." Thomas H. Oehmke, Commercial Arbitration § 144:3 (Jan. 2023 ed.). Similarly, this Court has ruled that a party who was misled on the proper manner to substantiate its claim was

22

denied the opportunity to present its case in a meaningful manner. *See Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145-46 (2d. Cir 1992).

Another common ground for vacatur is where arbitrators exceed their powers in violation of § 10(a)(4).  Because arbitration is a creature of a contract, an arbitration award should be vacated if it runs contrary to the express contractual provisions that gave rise to it. If a contract places a limitation on the authority of an arbitrator, an award exceeding that authority is subject to vacatur. *187 Concourse Assocs.*, 399 F.3d at 526–27. There are two main situations in which courts find that arbitrators exceeded their power.  First are determinations as to issues outside the scope of arbitral authority. *See, e.g.*, *Matter of Arbitration Between Melun Indus., Inc. and Strange*, 898 F.Supp. 990, 993–94 (S.D.N.Y.1990) Second are determinations as to parties outside the scope of arbitral authority. Where an award attempts to determine the obligations of parties not properly before the arbitration panel, it exceeds its jurisdiction, and the award should be vacated.  *See*, *e.g.*, *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 570 (2d. Cir. 2020); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 300-01 (2d Cir. 1963).

In addition to the express grounds for vacatur in the FAA, this Court has recognized that vacatur is warranted where arbitrators act in "manifest disregard of the law." *Porzig*, 497 F.3d at 139.

23

In evaluating whether an arbitration proceeding comported with fundamental fairness and the statutory and judicial standards for vacatur, the question does not depend on individual circumstances viewed in isolation, but on whether the totality of circumstances taken together warrants vacatur. *Id.*

**A.      The Arbitration Proceeding in This Case Was Fundamentally Unfair**

The arbitration proceeding in the present case was fundamentally unfair. Throughout the entire proceeding, it was undisputed that New York law governed the central question of specific performance. The panel, however, denied Terra and DTH discovery to substantiate affirmative defenses to specific performance under New York law, disregarded substantive New York law governing specific performance, and instead based its award on a standardless and unbounded power of equity purportedly founded in the AAA commercial arbitration rules.  The award is the result of a fundamentally unfair process and should be vacated.

**1.      It Was Fundamentally Unfair to Conduct the Proceeding as If New York Law Controlled and Then Disregard New York Law**

Due process in an arbitration proceeding requires that a party be given the opportunity "to be heard at a meaningful time in a meaningful manner." *See Iran Aircraft*, 980 F.2d at 146. A party is not afforded a fair hearing where the tribunal instructs a party to present its case in a particular manner, only to reject the claim for lack of proof. *Id.*

24

That is what happened here. Section 8.10 of the SHA is titled "Governing Law" and states: "This Agreement will be governed by and construed in accordance with the Laws of the State of New York, United States without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction)." A75. Starting with the demand for arbitration, confirmed by the Panel's orders, and memorialized in every brief submitted in connection with Phase 1, New York law governed the issue of specific performance. *See* A161 ¶ 159; A441 ¶ 53; A780-797; A791-792; A956-957; A976. Then at the phase 1 hearing, the panel suggested, sua sponte and for the first time, that the question of specific performance might be governed by AAA Commercial Rule R-47, rather than New York law. A1338 [137:12-19]. Rule R-47(a) states: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." AAA Commercial Rule R-47(a).

The subsequent award turned out to be based on that very theory. The Panel's FPFA summarily disposed of Terra's affirmative defenses to specific performance by distinguishing their equitable powers as arbitrators from those of a court of law. A844 ¶ 57 (stating Terra's equitable defenses might restrict judicial equitable power but are "not a controlling principle of **substantive** New York

25

contract law applicable in an arbitration where such law is governing") (emphasis added). Having conducted the entire proceeding on the premise that New York law governed the question of specific performance, the panel's last-minute switch to a rule of standardless and unbound discretion deprived Appellants of any meaningful opportunity to be heard.

## 2. The Panel Applied the Wrong Law

Section 8.10 of the SHA plainly expresses the parties' election to be governed by New York law. It admits no exceptions. The panel's rejection of New York law and reliance instead on AAA Rule R-47 enabled it to shed all doctrinal constraints on the equitable award of specific performance. To accept the panel's action would eviscerate the rule that parties are entitled to enforcement of a contractual choice of law. *See InterChem Asia 2000 Pte. Ltd. v. Ocean Petrochems. AG*, 373 F.Supp.2d 340, 346 (S.D.N.Y. 2005).

## B. Specific Performance of a Contract is a Substantive Remedy Governed by New York Law

The panel acknowledged it was refusing to follow New York law and attempted to justify that refusal by characterizing Appellants' defenses to specific performance as procedural rather than substantive. A844 ¶ 57 (stating that "the doctrine of unclean hands is a judicial **procedural** principle applicable when a court sits as a court of equity") (emphasis added). That is incorrect. The defenses Appellants raised, such as the equitable defense of unclean hands, are matters of

26

substantive law. *See, e.g.*, *Petrella v. Metro-Goldwyn-Meyer, Inc.*, 572 U.S. 663, 678-79 (2014) (describing the availability of equitable claims and defenses as substantive matters). Federal courts in this district sitting in diversity routinely look to New York substantive law as the source of the doctrine. *See, e.g.*, *Abbott Labs. v. Feinberg*, 506 F. Supp. 3d 185, 202 (S.D.N.Y. 2020) (citing New York law for statement of unclean hands doctrine); *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 122 (S.D.N.Y. 2020) (same). Terra briefed the panel on the substantive nature of specific performance, but the panel ignored it. A1764-1766; A845 ¶57.

Notably, the panel's refusal to entertain Appellants' affirmative defenses was inconsistent with the very rules of arbitration on which the panel based its decision. Rule R-32(a) provides: "The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case." *See* AAA Commercial Rule R-32(a).

In the present case, the panel heard evidence relevant to Appellees' claims for breach of the SHA, but Appellants were not permitted to "present evidence to

support [their] defense," *id*., and witnesses for Appellees were not required to "submit to questions from [Appellants]," *Id*. Thus, even by the rules on which the panel relied, the parties were in no sense "treated with equality," *id*., and Appellants were not given "the right to be heard and . . . a fair opportunity to present [their] case." *Id*.

The panel's refusal to apply the governing body of law, that of New York, and application instead of a standardless and unbounded power of equity under the commercial arbitration rules, deprived Appellants of a fundamentally fair proceeding. The FPFA should be vacated.

**C.     It Was Fundamentally Unfair to Deny Appellants Discovery to Substantiate Their Defenses to Specific Performance**

The panel granted Appellees' request for equitable relief while refusing to permit Appellants any opportunity to substantiate their equitable defenses. That is the epitome of a fundamentally unfair proceeding.

In denying Appellants' request for discovery, the panel stated: "[I]n Phase 1 as now constituted under PO #3 the panel intends only to make a determination of the legal sufficiency of pleaded affirmative defenses to the requested specific performance. . .." A1014-1018. The panel then issued the FPFA, in which it rejected Appellants' defenses of unclean hands and waiver as factually deficient. A844.

28

"The lynchpin of unclean hands is conduct." *Petrello v. White*, No. 01-CV-3082 (DRH), 2007 WL 2276300, at *9 (E.D.N.Y. 2007). Appellants based their unclean hands defense on Peppertree and AMLQ's underhanded attempt to manufacture a sale of the Company to themselves, at a deflated price, and block DTH and Terra from competing in the market. A1007, RFP No. 1. To substantiate that defense, Appellants should have been permitted discovery. *See PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (vacating district court's dismissal because a party must be allowed discovery to collect evidence of inequitable conduct which might support its defense of unclean hands). The panel categorically rejected Appellants' right to raise an unclean hands defense and denied Appellants any discovery to support such a defense, all on the premise that a court's equitable power is distinguishable from the panel's "arbitration" equitable power. A844 ¶ 57. Thus, the panel did not doubt that Appellants would have had a right to discovery to support their equitable defenses to specific performance in a judicial proceeding; the panel simply ruled that Appellants had no such right in an arbitration and would be given no means or opportunity to defend themselves. The result was a fundamentally unfair and one-sided proceeding. Vacatur is warranted.

Appellants' defense of waiver was based on Peppertree's failure to hold (or even attempt to call) a board meeting after sending the January 19 Notice. The

panel rejected the waiver defense without permitting any discovery, based on three findings: (1) "Claimants' course of action was obviously influenced by the written communication received from Terra on January 27, 2021", A828 ¶ 34; (2) "Claimants could have reasonably believed that sending the Proposed Sale Notice put the ball squarely in Terra's court" A829 ¶ 34; and (3) "Claimants conduct is best viewed not as waiver but as a resort to arbitration in furtherance of their rights" A829 ¶ 35. Based on those factual findings, the panel ruled that Appellees could not have knowingly relinquished their right to a sale under the January 19 Notice, and the panel rejected Appellants' waiver defense.

Appellants, however, had sought discovery directly related to these facts. A999-1012. Specifically, Appellants sought internal communications relating to Peppertree's refusal to hold a Board meeting so that the Company could retain an Investment Bank to facilitate a sale. A1009, RFP No. 6. And although the panel viewed Peppertree's resort to arbitration as in furtherance of its rights, Peppertree never sent a dispute notice as required by section 8.14 of the SHA for the January 19 Notice, and its initial demand for arbitration only sought specific performance of the Torrecom offer. *See* A162-177 ¶¶ 167, 173, 176, 185-187, WHEREFORE ¶ A.

By denying Appellants any discovery into their affirmative defenses, the panel deprived Appellants of a fundamentally fair proceeding. The resulting award should be vacated.

## II.     The November 15 Order and March 15 Order attempt Should Also Be Vacated as Beyond the Arbitration Panel's Jurisdiction

The November 12 Order and March 15 Order attempts to control subsidiaries of DTH that are not signatories to the SHA and are parties only to agreements in their respective countries, governed by those countries' laws. A1188 ¶ 12; A1693 ¶ 13. Absent a court order (which was not obtained in the present case), the panel had no authority to assert jurisdiction, and compel arbitration by, the subsidiaries. *See Orion Shipping*, 312 F.2d at 300-01.

### A.     The Interim Orders Are Subject to Judicial Review

An interim arbitral order which "finally and definitively disposes of a separate independent claim," is subject to judicial confirmation or vacatur—even if "it does not dispose of all the claims that were submitted to the arbitration." *See Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986). Whether Gaitan and Echeverria remain employed are issues which are entirely collateral and separate from the other issues in the arbitration.

Although styled as "interim relief", the November 12 Order required an entity to implement certain working conditions "definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do

31

not stand in need of further adjudication. *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998).

Although the panel contemplated "further proceedings" on the November 12 Order, there is no suggestion that the panel would revisit its decision in light of further fact-finding or legal argument. Rather, the panel reserved only the issue of compliance with its award. A1188 ¶¶ 13-14 ("If further proceedings on the sufficiency of compliance with this Order, or the consequences of any non-compliance, should be required, they will be joined to the Phase 1 hearing scheduled for December 1, 2021.") The November 12 Order is an injunction which establishes Gaitan's and Echeverria's ongoing employment roles in the Company. A1185-1188. When an arbitral order "required specific action and did not serve as a basis for further decisions by the arbitrators," it is to be treated as a partial final award. *See Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F.Supp.3d 327, 337 (S.D.N.Y. 2014) (citing and quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (cleaned up).

As the District Court noted, to be subject to judicial review "an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them." *JLNW, Inc. v. Nat'l Ret. Fund*, No. 17-CV-5095 (AJN), 2018 WL 4757953 at *4 (S.D.N.Y. Sept. 28, 2018). However, where a specific issue is submitted to the arbitrator for separate review and their determination of

32

the issue is independent of the other claims in the arbitration, the award is final and subject to judicial review. *See id*. at *7 (citing *Trade & Transp., Inc. v. Nat'l Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).

### B.     The Interim Orders Exceeded the Tribunal's Jurisdiction

The November 12 Order and March 15 Order attempt to bind subsidiaries of DTH. These subsidiaries have never appeared before the panel. Proyectos, although providing back-office and operational services to the Company's subsidiary in Guatemala, entered into an entirely separate SG&A agreement with a that subsidiary, which has its own dispute resolution clause—subjecting any disputes to a local arbitration tribunal. *E.g.*, A937 § FOURTEEN; A1195-1196. Thus, the orders contravene the long-standing principle that courts determine a party's obligation to arbitrate, barring "clear and unmistakable" intent to designate that determination to the arbitration. *See Orion Shipping*, 312 F.2d at 300-01. A petition to confirm an arbitration award is not the proper time for a court to conduct an agency theory analysis on whether a related company may be compelled to arbitrate. *See id*. at 301. Even worse, the panel usurped the jurisdiction of the local courts, in which both Gaitan and Echeverria filed employment claims following their departure from DTH's subsidiaries. A1193 ("As did Echeverria, Gaitan has filed a labor claim against his employer Proyectos,

33

and his contracting party Desar[r]olladora, requesting his severance payment for unlawful termination of these agreements.")

## CONCLUSION

The First Partial Final Award, November 12 Order, and March 15 Order should be vacated, and the case should be remanded for further proceedings.

Dated: May 2, 2023

Respectfully submitted,

/s/ Juan J. Rodriguez
JUAN J. RODRIGUEZ
LUKE T. JACOBS
CAREY RODRIGUEZ, LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Tel: (305) 372-7474
jrodriguez@careyrodriguez.com

*Counsel for Respondents-Appellants*

34

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7) because this document contains fewer than 13,000 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface in 14-point Times New Roman.

<u>/s/ Juan J. Rodriguez</u>
Juan J. Rodriguez

35

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using appellate CM/ECF system on May 2, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Juan J. Rodriguez
Juan J. Rodriguez