No. 23-0144-cv

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC,
AMLQ HOLDINGS (CAY), LTD.,
*Petitioners-Appellees,*

v.

TERRA TOWERS CORP., TBS MANAGEMENT, S.A. ,
*Respondents-Appellants,*

DT HOLDINGS, INC. ,
*Cross-Claimant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

*Brief for Petitioners-Appellees*

---

**ULMER & BERNE LLP**
Michael N. Ungar
Katherine M. Poldneff
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000

**ROPES & GRAY LLP**
Gregg L. Weiner
Andrew S. Todres
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000

Daniel V. Ward
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000

## CORPORATE DISCLOSURE STATEMENT

Petitioners-Appellees Telecom Business Solution, LLC and LATAM Towers, LLC are affiliates of Peppertree Capital Management, Inc. ("PCMI"), an Ohio-based private equity firm. PCMI does not have an ownership interest in either Telecom Business Solution, LLC or LATAM Towers, LLC but, instead, manages the various funds that own them. No publicly held corporation owns more than 10% of Telecom Business Solution, LLC, LATAM Towers, LLC, or PCMI.

Petitioner-Appellee AMLQ Holdings (Cay), Ltd. ("AMLQ") is Cayman Island Exempted Company Limited by Shares. Goldman, Sachs & Co. LLC is the corporate parent of AMLQ. Goldman Sachs & Co. LLC is a wholly-owned subsidiary of The Goldman Sachs Group, Inc., a publicly-traded corporation. To the best of its knowledge, no publicly-traded entity owns 10% or more of the shares of The Goldman Sachs Group, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE CASE ...........................................................5

    A.    The Parties and Peppertree/AMLQ's Investment in the
Company ...........................................................................5

    B.    The Governing Documents .............................................6

          1.    The Shareholders Agreement.......................................7

          2.    The Development Agreement .....................................9

    C.    Terra Refused to Comply with Section 5.04(b) of the
Shareholders Agreement ................................................9

    D.    Peppertree Initiated Arbitration Due to Terra's Breaches of the
Shareholders Agreement and Other Wrongful Conduct by
Terra/DTH, and the Parties Appointed the Tribunal.........................10

    E.    The Tribunal Conducted a Full and Fair Phase 1 Proceeding to
Address Peppertree/AMLQ's Narrow Specific Performance
Claim for the Sale of the Company, Resulting in the FPFA..............12

    F.    The Tribunal Conducted a Full and Fair Process Before
Ordering Interim Relief Due to Terra/DTH's Misconduct .................15

          1.    The Tribunal Issued the November 12 Interim Order After
Terra/DTH Intimidated, Harassed, and Improperly
Removed Company Management.............................................15

          2.    The Tribunal Issued the March 15 Order After Terra/DTH
Blatantly Failed to Comply with the Tribunal's November
12 Order .........................................................................18

    G.    The District Court Confirmed the Tribunal's FPFA............................20

STANDARD OF REVIEW ..............................................................21

SUMMARY OF THE ARGUMENT ..................................................23

ARGUMENT ................................................................................25

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE PHASE 1
PROCEEDINGS WERE FUNDAMENTALLY FAIR ................................25

    A.    The FPFA Is the Product of a Fundamentally Fair Process................26

B.     Terra Had Multiple Opportunities to Be Heard Regarding Whether AAA Commercial Rule R-47 or New York Law Governed the Relief Requested by Peppertree/AMLQ.......................27

C.     The Tribunal Did Not Manifestly Disregard New York Law.............30

D.     The Tribunal Acted Well Within Its Broad Discretion in Denying Terra Discovery on Its Affirmative Defenses ......................33

II.     THE DISTRICT COURT CORRECTLY HELD THAT THE INTERIM ORDERS ARE NOT SUBJECT TO JUDICIAL REVIEW AND THAT THE TRIBUNAL ACTED WITHIN ITS POWERS IN ISSUING THEM ...................................................................................................35

A.     The Interim Orders Are Not Subject to Judicial Review ...................36

B.     The Interim Orders Did Not Exceed the Tribunal's Jurisdiction........39

CONCLUSION ........................................................................................42

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&A Maint. Enter., Inc. v. Ramnarain,*
   982 F.3d 864 (2d Cir. 2020) ...................................................................21

*Abbott Lab'ys v. Feinberg,*
   506 F. Supp. 3d 185 (S.D.N.Y. 2020), *aff'd,* 2023 WL 19076 (2d
   Cir. Jan. 3, 2023) ..................................................................................32

*In The Matter of Arbitration Between Am. Indus. Carriers, Inc. v.
   Maywood Maritime Ltd.,*
   1992 WL 84536 (S.D.N.Y. Apr. 10, 1994) .............................................41

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.,*
   344 F.3d 255 (2d Cir. 2003) ...............................................................4, 21

*Cablevision Sys. Corp. v. Can Muneyyirci,*
   1995 WL 362541 (E.D.N.Y. June 2, 1995) .......................................40, 41

*CE Int'l Resources Holdings LLC v. S.A. Minerals, Ltd.,*
   2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012) .........................................14

*Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S. A.,*
   300 F. Supp. 179 (S.D.N.Y. 1969) .........................................................34

*Cofinco, Inc. v. Bakrie & Bros., N. V.,*
   395 F. Supp. 613 (S.D.N.Y. 1975) .........................................................34

*Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace
   Workers Loc. Lodge W-260,*
   996 F. Supp. 2d 559 (E.D. Mich. 2014) ..................................................40

*Doctor's Assocs., Inc. v. Stuart,*
   85 F.3d 975 (2d Cir. 1996) .....................................................................30

*Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S,*
   333 F.3d 383 (2d Cir. 2003) ..........................................................4, 21, 22

*Duferco, S.A. v. Tube City IMS, LLC*,
  2011 WL 666365 (S.D.N.Y. Feb. 4, 2011) .......................................................33

*Ecopetrol S.A. v. Offshore Exploration & Production LLC*,
  46 F. Supp. 3d 327 (S.D.N.Y. 2014) ...................................................38

*Fed. Deposit Ins. Corp. v. Murex LLC*,
  500 F. Supp. 3d 76 (S.D.N.Y. 2020) ...................................................32

*Hamerslough v. Hipple*,
  2012 WL 5290318 (S.D.N.Y. Oct. 24, 2012).......................................22

*Harte v. Ocwen Fin. Corp.*,
  2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016).......................................40

*Home Indem. Co. v. Affiliated Food Distributors, Inc.*,
  1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) ........................................34

*Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De
  Tronquistas Local 901*,
  763 F.2d 34 (1st Cir. 1985)..................................................................34

*Int'l Bus. Machines Corp. v. Comdisco, Inc.*,
  1993 WL 155511 (N.D. Ill. May 10, 1993)...........................................40

*Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*,
  232 F.3d 383 (4th Cir. 2000) ...............................................................34

*JLNW, Inc. v. National Retirement Fund*,
  2018 WL 4757953 (S.D.N.Y. Sept. 28, 2018) .....................................38

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
  729 F.3d 99 (2d Cir. 2013) ..................................................................26

*Landmark Ventures, Inc. v. InSightec, Ltd.*,
  63 F. Supp. 3d 343 (S.D.N.Y. 2014) ...................................................26

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
  790 F.2d 280 (2d Cir. 1986) ...............................................................38

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Source One Staffing LLC*,
  2017 WL 2198160 (S.D.N.Y. May 17, 2017) .......................................26

*NML Cap., Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ...............................................................42

*NYKCool A.B. v. Pacific Fruit, Inc.*,
507 F.App'x 83 (2d Cir. 2013) ...........................................................29

*Oracle Corp. v. Wilson*,
276 F. Supp. 3d 22 (S.D.N.Y. 2017) ..................................................33

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013)............................................................................21

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
372 F.3d 488 (2d Cir. 2004) ..............................................................34

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)............................................................................33

*Publicis Commc'n v. True North Commc'ns, Inc.*,
206 F.3d 725 (7th Cir. 2000) ........................................................37, 38

*Rai v. Barclays Capital, Inc.*,
739 F. Supp. 2d 364 (S.D.N.Y. 2010) ................................................21

*Rocket Jewelry Box, Inc. v. Noble Gift Packing, Inc.*,
157 F.3d 174 (2d Cir. 1998) ..............................................................36

*Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*,
2020 WL 5237800 (S.D.N.Y. Sept. 2, 2020) .....................................21

*Schwartz v. Merrill Lynch Co.*,
665 F.3d 444 (2d Cir. 2011) ..............................................................31

*Seneca Nation of Indians v. New York*,
988 F.3d 618 (2d Cir. 2021) ..............................................................30

*SH Tankers Ltd. v. Koch Shipping Inc.*,
2012 WL 2357314 (S.D.N.Y. June 19, 2012) ....................................36

*Soleimani v. Andonian*,
2022 WL 748246 (S.D.N.Y. Mar. 10, 2022)......................................39

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2d Cir. 2010) ................................................................30

*Tempo Shain Corp. v. Bertek, Inc.*,
  120 F.3d 16 (2d Cir. 1997) ................................................................34

*Tradiverse Corp. v. Luzar Trading, S.A.*,
  2019 WL 2433605 (S.D.N.Y. June 11, 2019) ....................................27

*Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*,
  211 F. Supp. 3d 505 (E.D.N.Y. 2016) ................................................33

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009)..........................................................42

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior
  Univ.*,
  489 U.S. 468 (1989).............................................................................30

*Ward v. Ernst & Young U.S. LLP*,
  468 F. Supp. 3d 596 (S.D.N.Y. 2020) ................................................36

**Statutes**

9 U.S.C. § 10(a) ......................................................................................4, 22

**Other Authorities**

AAA Commercial Rule R-37......................................................16, 23, 37

AAA Commercial Rule R-47.............................................14, 28, 29, 30

## PRELIMINARY STATEMENT

Petitioners-Appellees Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay) Ltd. ("AMLQ" and together with Peppertree, "Peppertree/AMLQ") hereby submit this brief in opposition to the brief of Respondents-Appellants Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra") and DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH") (ECF No. 68).

This matter involves sophisticated parties represented by sophisticated counsel, who negotiated and agreed to be bound by a detailed dispute resolution process through arbitration for any and all disputes involving the company they jointly own, Continental Towers LATAM Holdings Limited (the "Company"). Now, after losing on several issues both in the underlying, ongoing arbitration **and** before the District Court, Terra/DTH persist in seeking a do-over before this Court. Yet, well-established Second Circuit authority mandates the binding nature of arbitration and the exceedingly narrow grounds for federal courts to vacate or modify a final arbitration award. Nonetheless, Terra/DTH ask this Court to vacate both the **unanimous** and well-reasoned First Partial Final Award and Interim Orders[1]—the

---

[1] The 44-page "First Partial Final Award" (or "FPFA") ordered the contractually required sale of the Company, while the "Interim Orders" issued on November 12, 2021 and March 15, 2022 sought to prohibit Terra/DTH from continuing their pattern of misconduct in breach of the Company's governing documents during the pendency of the arbitration.

latter of which are not even subject to judicial review—issued by a tribunal of three highly experienced and well-credentialed New York-based arbitrators (the "Tribunal") and confirmed by the Honorable Lewis A. Kaplan of the United States District Court for the Southern District of New York. Terra/DTH fail to provide any factual or legal basis to vacate these rulings, let alone to meet the narrow and exacting standard required to vacate an arbitration award set forth in the Federal Arbitration Act ("FAA") and Convention on the Recognition and Enforcement of Foreign Arbitral Awards. That standard does not permit Terra/DTH to evade the clear agreements they made simply because they are dissatisfied with the Tribunal's rulings.

The FPFA implemented the straightforward provision of the parties' governing documents requiring a sale of the Company to a third party if either Peppertree or Terra so requested after a five-year Lock-Up Period. Peppertree first requested a sale pursuant to this provision in November 2020, but Terra objected and then resisted a second request Peppertree made in January 2021, notwithstanding the express requirement in the parties' Shareholders Agreement to "vote for, consent to[,] raise no objections against . . . and take all necessary and reasonable actions in connection with the consummation of" the sale. A-56 1 § 5.04(b)(ii). After a fundamentally fair process in which both sides made multiple submissions (totaling well over 100 pages of briefing, along with 8 witness statements and over 70

exhibits) and participated in a full-day hearing, the Tribunal unanimously found that Terra had breached this unambiguous and straightforward sale provision and ordered its specific performance. In doing so, the Tribunal interpreted and relied on the express specific performance provision of the Shareholders Agreement (specifying that breaches of the parties' agreements would cause irreparable harm entitling a party to specific performance), as well as New York law and the Tribunal's powers under the American Arbitration Association ("AAA") Commercial Rules which the parties expressly agreed would govern any arbitration proceeding. That was clearly the correct ruling, and one not conceivably subject to vacatur under the narrowly limited review permitted by the FAA. Simply put, there is no legitimate basis to retract or further delay the long-overdue mandated sale of the Company.

During the pendency of arbitration proceedings on the sale of the Company, the Tribunal also addressed Terra/DTH's wrongful campaign against Company management, piece by piece, on an interim basis. Terra/DTH engaged in repeated, improper attempts to remove the Company's Chief Executive Officer ("CEO") and Chief Operating Officer ("COO") without Board approval, in violation of the Shareholders Agreement. Peppertree/AMLQ thus brought an emergency motion for interim relief, which the Tribunal granted in a November 12, 2021 interim order to restore the Company's management, consistent with the express contractual requirement that management cannot be removed without Board approval. In a

- 3 -

second interim order dated March 15, 2022, the Tribunal found that Terra/DTH failed to comply with the November 12, 2021 interim order, and ordered them to publish certain corrective statements. The interim relief process is not subject to review.

In sum, as set forth herein and consistent with the District Court's findings, the unanimous FPFA issued by the three highly experienced arbitrators easily clears the prevailing "***barely colorable justification for the outcome reached***" standard for confirming an award. *See Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003). Terra/DTH, meanwhile, have failed to establish that ***any*** of the narrowly circumscribed grounds[2] for vacatur apply here. Instead:

1) The FPFA was the result of a fundamentally fair process in which Terra/DTH had ample opportunity to be heard;[3]

---

[2] As discussed below, the FAA provides for vacatur of an arbitration award only where (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a). In extremely rare and limited circumstances, a court also may vacate an award where it was rendered in "manifest disregard of the law." *Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003).

[3] Indeed, Judge Kaplan found both that "the [Tribunal's] decision to phase the Arbitration was well within the [Tribunal's] broad discretion over procedural aspects of the arbitration, including choosing to bifurcate the proceedings when appropriate" and that "the [Tribunal's] decision to deny [Terra/DTH's] discovery requests during Phase 1 was within the [Tribunal's] discretion to vary procedure and deny discovery." SPA-13-14.

- 4 -

2)    The Interim Orders do not "resolve finally" any issues before the Tribunal and, thus, are not even subject to judicial review; and

3)    The Interim Orders were well with the Tribunal's discretion to issue.

Judge Kaplan's legal and factual holdings easily clear this Court's *de novo* and "clear error" standards of review on appeal, respectively. Accordingly, Peppertree/AMLQ respectfully request that this Court deny Terra/DTH's request to vacate the FPFA and Interim Orders and, instead, affirm the District Court's judgment.

## STATEMENT OF THE CASE

### A.    The Parties and Peppertree/AMLQ's Investment in the Company

Peppertree Capital Management, Inc. ("PCMI") is an Ohio-based private equity firm and one of the most successful and experienced investors in the communication infrastructure industry in the United States. A-114 ¶ 1. PCMI has participated in more than one hundred (100) communication infrastructure investments since 2004, most of which involve the development or acquisition of wireless communication towers. *Id.* In a series of investments in 2014 and 2015, PCMI invested in the Company through the two Peppertree entities, both of which are created and organized under the laws of Delaware. A-115 ¶ 3; A-123 ¶¶ 19-20.

AMLQ is a Cayman Island Exempted Company Limited by Shares. A-425 ¶ 1. It is an affiliate of Goldman Sachs & Co. LLC, a leading investment banking,

securities, and investment management firm and, like PCMI, has extensive experience in communication infrastructure investments. *See* A-116 ¶ 6.

Terra and DTH are both owned and controlled by Jorge Hernandez, a Guatemalan entrepreneur involved in telecommunications, real estate, services, and technology projects. A-388 ¶ 22. Terra and DTH both have a local presence in the communication infrastructure industry in South America and Central America, where they build towers and other communication infrastructure. A-388-89 ¶¶ 23-25. Terra Towers is a company incorporated in the British Virgin Islands; Terra TBS is a *sociedad de responsibilidad limitada* organized under the laws of Panama; and DTH is incorporated in Panama. A-387 ¶¶ 14-15.

Altogether, Peppertree and AMLQ contributed approximately $125 million in cash to join Terra as shareholders in the Company, a telecommunications infrastructure company based in Central America and incorporated in the British Virgin Islands. A-126 ¶¶ 36-37. The parties' percentage ownership of the Company is as follows: (1) Terra: 54.45%; (2) Peppertree: 32.2%; and (3) AMLQ: 13.35%. A-126-27 ¶ 38.

## B. The Governing Documents

On October 22, 2015, in connection with Peppertree's and AMLQ's investments in the Company, the parties negotiated and executed a set of governing documents, including a Shareholders Agreement and a Development Agreement. A-

127 ¶ 39.  The parties were represented by sophisticated legal counsel of their choosing during this process.  A-71-74 § 8.03.  Thompson Hine LLP represented Peppertree, Ropes & Gray LLP represented AMLQ, and both Holland & Knight LLP and Mayora & Mayora, S.C. represented Terra/DTH.  *Id.*

### 1.    *The Shareholders Agreement*

The Shareholders Agreement was drafted to protect Peppertree/AMLQ, as minority shareholders, from potential majority-shareholder oppression.   For example, it establishes a four-member Board of Directors consisting of two Directors appointed by Terra and two Directors appointed by Peppertree, A-46 § 4.02(f), and provides that the Board may only act by majority vote or unanimous written consent of all Directors.   A-47 § 4.03(d).  Virtually all Company actions—including the appointment and removal of Company executives and management—require Board approval.  A-48 § 4.04(a); A-51 § 4.06(a).

Because the Company is closely held, and because a market does not exist such that one of the shareholders (especially a minority shareholder) can simply sell its shares to exit the Company, the Shareholders Agreement created a "safety valve" to ensure that the shareholders are not locked into their investment against their will into perpetuity.  A-144-45 ¶¶ 107-08.  Specifically, Section 5.04(b) provides that upon "the expiration of the Lock-Up Period"—which is defined as a "period of five (5) years starting on the Effective Date [October 22, 2015] and ending on the fifth

anniversary of the Effective Date [October 22, 2020]"—either Peppertree or Terra "may request, upon written notice to the other" shareholders and the Company, "a sale of all or substantially all of the Company's assets or all or substantially all of the Shares in the Company."  A-55-56 § 5.04(b).  If such a request is made by either Peppertree or Terra, "the Company *shall*, within thirty (30) calendar days of receipt of a Proposed Sale Notice, retain an Investment Bank to facilitate an Approved Sale."  A-56 § 5.04(b)(ii) (emphasis added).  In addition, "each Shareholder *shall* vote for, consent to and raise no objections against such Approved Sale," and the shareholders must "take *all* necessary and reasonable actions in connection with the consummation of the Approved Sale."  *Id*. (emphasis added).

In Section 8.12 of the Shareholders Agreement, entitled "Specific Performance," Peppertree/AMLQ and Terra "agree[d] that irreparable damage would occur in the event any provision of [the Shareholders Agreement] was not performed in accordance with the terms hereof and that the parties *shall* be entitled to specific performance of" the terms of the Shareholders Agreement, "in addition to any other remedy at Law or in equity."  A-75 § 8.12 (emphasis added).

The Shareholders Agreement contains a broad arbitration provision.  Therein, the parties agreed that "any Dispute . . . will be finally settled by binding arbitration," and that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of

- 8 -

the arbitration." A-76-77 § 8.15. The arbitration provision further provides that "[t]he seat of the arbitration shall be New York, New York"; that the "arbitration award shall be in writing and shall be final and binding on the parties"; and that the award "may include an award of costs, including reasonable attorney's fees and disbursements." *Id.*

### 2. *The Development Agreement*

The Development Agreement governs the Company's relationship with Terra's affiliate, DTH, which provides systems and operations services to the Company. A-274-84. Given that the Company is contractually obligated to rely upon DTH for much of its operating capability, some members of the Company's management team are primarily employees and agents of DTH. The Company pays DTH a monthly fee of $480,000 for these personnel and other services, as set forth in the Development Agreement, to which Terra, DTH, and the Company are parties. A-277 § 1.1(f); SA-0010. The Development Agreement expressly incorporates the arbitration provision in the Shareholders Agreement. A-279 § 3.4.

### C. Terra Refused to Comply with Section 5.04(b) of the Shareholders Agreement

On January 19, 2021, after the five-year Lock-Up Period expired, and in accordance with Section 5.04(b) of the Shareholders Agreement, Peppertree requested, in writing, "a sale of all or substantially all of the Company's assets or all or substantially all of the shares in the Company" (the "Proposed Sale Notice"). A-

83. Peppertree sent Terra the Proposed Sale Notice after Terra rejected an earlier offer to purchase the Company that Peppertree procured from Torrecom Partners LP ("Torrecom").[4] On January 27, 2021, Terra responded to the Proposed Sale Notice by stating, in part, that "[t]he directors appointed by Terra will not likely be inclined to approve an Investment Bank proposed by Peppertree." A-90. Terra continued: "With a deadlocked Board, the Company will be unable to appoint an Investment Bank to facilitate an Approved Sale." *Id*. Thus, despite their contractual agreement to "vote for, consent to and raise no objection against [Peppertree's proposed sale]," and their further agreement to "take all necessary and reasonable actions in connection with the consummation of [Peppertree's proposed sale]," Terra refused to proceed with the proposed sale, thereby materially breaching the Shareholders Agreement. A-55 § 5.04(b).

> **D. Peppertree Initiated Arbitration Due to Terra's Breaches of the Shareholders Agreement and Other Wrongful Conduct by Terra/DTH, and the Parties Appointed the Tribunal**

On February 2, 2021, in response to Terra/DTH's various breaches of the governing documents, including Section 5.04(b) of the Shareholders Agreement, Peppertree filed a Demand for Arbitration and Statement of Claims against

---

[4] Terra/DTH's attempt to malign the offer from Torrecom, *see* Br. at 8, is a red herring. The Tribunal was clear in issuing the FPFA that it ordered Peppertree/AMLQ's specific performance only with respect to the January 19, 2021 Proposed Sale Notice and ***not*** the Torrecom offer. *See, e.g.*, A-843 ¶ 56 n.13; A-852 ¶ 72(i).

Terra/DTH with the International Centre for Dispute Resolution ("ICDR") of the AAA pursuant to the arbitration provision of the parties' governing documents. A-113-77. Peppertree sought, in relevant part, "specific performance of all provisions of the Governing Documents requiring [a] sale of the Company, including Section 5.04(b) of the Shareholders Agreement." A-164 ¶ 178. Specifically, Peppertree alleged that it was

> entitled to an award of specific performance, requiring [Terra] to perform their obligations under the Governing Documents, including but not limited to, hiring an Investment Bank to facilitate an Approved Sale and to vote for, consent to, and raise no objections against such Approved sale, [and to] take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by [Peppertree].

A-166 ¶ 186.

On February 19, 2021, Terra asserted various counterclaims against Peppertree, as well as claims against AMLQ. A-303-421. On March 25, 2021, AMLQ countered Terra's claims and joined in Peppertree's request for specific performance of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company. *See* A-443 ¶ 62; A-446 ¶ 83.

On July 19, 2021, the ICDR informed the parties that the Tribunal had been confirmed. The Tribunal consisted of Richard Ziegler, Peppertree/AMLQ's party-appointed arbitrator; Melida Hodgson, Terra/DTH's party-appointed arbitrator; and

- 11 -

Chair Marc Goldstein, who was selected through a rank-and-strike process. SA0003.

**E. The Tribunal Conducted a Full and Fair Phase 1 Proceeding to Address Peppertree/AMLQ's Narrow Specific Performance Claim for the Sale of the Company, Resulting in the FPFA**

Shortly after the Tribunal was empaneled, on August 6, 2021, Peppertree/AMLQ filed a written submission seeking expedited, phased consideration of their request for specific performance of Section 5.04(b) of the Shareholders Agreement. A-780-95. In two separate submissions, Terra opposed this request and advocated adjudicating all of the parties' claims in a single merits hearing that would take place at least nine months later. *See* A-708-807.

On August 11, 2021, over Terra's objection, the Tribunal ordered expedited consideration of Peppertree/AMLQ's request for specific performance of Section 5.04(b) ("Phase 1"). A-808. The Tribunal also set a schedule ordering simultaneous exchanges of opening and responsive memorials on those issues, followed by a hearing. A-809.

Terra then sought leave to serve broad discovery requests that were irrelevant to Phase 1. A-998-1012. Peppertree/AMLQ opposed, contending that the Phase 1 sale claim involved threshold contractual and legal issues that could be addressed with limited documentation already in the possession of both sides. SA0637-38.

- 12 -

The Tribunal denied Terra's request, finding that the proposed discovery was "not directly relevant to the Phase 1 specific performance issue." A-1013-17.

Phase 1 consisted of the following initial process:

- On September 27, 2021, the parties submitted their Phase 1 opening memorials, which, with respect to Peppertree/AMLQ's proposed sale claim, contained a combined total of more than 66 pages of argument, 64 exhibits, and six (6) witness statements (A-1018-1127);

- On October 28, 2021, the parties submitted extensive responsive memorials, which contained further briefing, seven (7) exhibits, and two (2) witness statements related to the proposed sale claim (A-1709-96);

- On November 15, 2021, the parties provided written responses to 12 questions from the Tribunal related to the proposed sale claim, totaling more than 11 single-spaced additional pages of argument (A-1797-1815); and

- On December 1, 2021, the Tribunal conducted an all-day hearing on Phase 1, which produced nearly 300 transcript pages of argument related to the sale claim. *See* A-24 ¶ 28; A-1202.

On December 9, 2021, in an attempt to relitigate the Phase 1 procedure established by the Tribunal, Terra again urged the Tribunal "to consolidate the pending motion for specific performance with a final hearing on the merits affording the parties an opportunity to engage in discovery," which would have effectively resulted in abandoning Phase 1 altogether after the parties had already engaged in over four (4) months of Phase 1 litigation. SA0646.

On January 6, 2022, Peppertree/AMLQ made a 10-page responsive submission, pointing out that any documents and other information necessary to

- 13 -

decide this claim were already in the possession of the parties.  SA0657-58.  Terra submitted a nine-page response on January 13, 2022, in which it failed to identify **even one** specific discovery topic purportedly relevant or necessary to decide the specific performance claim.  SA0668.

Finally, on February 24, 2022—after considering the parties' Phase 1 opening and responsive memorials (including witness statements and exhibits, two (2) rounds of supplemental submissions, fee applications and responses, and hours of oral argument on the proposed sale claim during an all-day Phase 1 hearing)—the Tribunal issued the FPFA, ordering a sale of the Company and directing Terra to reimburse Peppertree/AMLQ for the attorneys' fees and costs incurred in connection with this claim.  A-810-60.

The 44-page FPFA is both well-reasoned and **unanimous**.  *See id.*  The Tribunal found that specific performance of the forced sale provision of the Shareholders Agreement was warranted pursuant to both Section 8.12 of the Shareholders Agreement and AAA Commercial Rule R-47(a), which provides arbitrators with the authority to order specific performance which "the arbitrator deems just and equitable and within the scope of the agreement of the parties."  A-821-22 ¶¶ 19-20.  Additionally, while the Tribunal found that, under *CE Int'l Resources Holdings LLC v. S.A. Minerals, Ltd.*, 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012), it was not bound by the "equitable power of the court" because its

authority derived from the parties' contract, it also found that the elements of specific performance under New York law were readily satisfied. A-833-34 ¶ 43; *see also* A-830 ¶ 37; A-835 ¶ 44; A-838-42 ¶¶ 49-55. Finally, the Tribunal confirmed that "it [was] appropriate to grant specific performance at this stage even though there ha[d] been no discovery" into Terra's counterclaims against Peppertree/AMLQ because such counterclaims could be addressed in the second phase of the Arbitration. A-842 ¶ 55 n.11.

### F. The Tribunal Conducted a Full and Fair Process Before Ordering Interim Relief Due to Terra/DTH's Misconduct

#### 1. *The Tribunal Issued the November 12 Interim Order After Terra/DTH Intimidated, Harassed, and Improperly Removed Company Management*

Meanwhile, on October 11, 2021, during the Phase 1 proceedings, the Company's independent counsel submitted a letter to the Tribunal revealing that Terra/DTH were engaged in a campaign of harassment and intimidation to improperly remove Jorge Gaitan, the Company's CEO, and Carol Echeverria, the Company's COO (collectively, "Management") and replace them with individuals who would support Terra/DTH in the Arbitration. A-1128-60. For example, Terra/DTH representatives shut down Management's email access, searched Mr. Gaitan's car and electronic devices, held him captive for hours, and directed that a DTH loyalist take over his duties and roles in the Company's management structure, all without Board approval. A-1130.

On October 15, 2022, Peppertree/AMLQ submitted an Emergency Motion for Expedited Interim Relief (the "Emergency Motion") to the Tribunal in which they sought an order preventing Terra/DTH from unilaterally terminating Management in violation of the Shareholders Agreement. SA0006-07. The Tribunal conducted an extensive process to resolve the issues raised in the Emergency Motion, which included over 50 pages of briefing, six witness statements, and many exhibits, as well as multiple proffers of testimony, and a lengthy and comprehensive evidentiary hearing. Specifically:

- At the request of the Tribunal, on October 18, 2021, Terra/DTH, the Company, and Peppertree/AMLQ made further submissions relating to both factual and legal issues posed by the Emergency Motion (A-1161-83; SA0678; SA0683);

- On October 19, 2021, the parties made and objected to proffers of testimony, SA0061; SA0692; SA0696; SA0700, and the Tribunal ruled on which witnesses it would hear from at the upcoming hearing (SA0067);

- On October 20, 2021, Terra/DTH, the Company, and Peppertree/AMLQ submitted pre-hearing memoranda, multiple witness statements, and exhibits (SA0088; SA0707; SA0830); and

- On October 21, 2021, the Tribunal and parties participated in an evidentiary hearing of over five (5) hours, resulting in over 230 transcript pages. SA0124.

On November 12, 2021, pursuant to AAA Commercial Rule R-37, the Tribunal unanimously granted Peppertree/AMLQ "***interim relief*** in the form of an injunction" requiring that DTH immediately restore Management to their positions

with the Company, and that Terra take all necessary steps to cause DTH to comply with the order (the "November 12 Interim Order"). A-1188 ¶ 12 (emphasis added). The Tribunal also ordered the Company and Terra/DTH to report on Terra/DTH's compliance with the November 12 Interim Order by November 24, 2021, and reserved decision on allocation of costs and fees. *Id.* ¶¶ 12, 14.

Critically, the Tribunal found that Terra breached Section 4.04(a) of the Shareholders Agreement by unilaterally removing Company management without the required Board approval, and that this breach caused irreparable harm to Peppertree/AMLQ's bargained-for minority corporate governance rights. A-1187 ¶ 8, A-1188 ¶ 11; *see also* A-48 § 4.04(a)(vi) (requiring Board approval for "the hiring or firing and compensation of members of the Management Team, including the Executive Team"). The Tribunal rejected Terra/DTH's arguments that the Tribunal did not have jurisdiction over DTH or its subsidiaries both because DTH agreed in the Development Agreement to arbitrate disputes related to the Company, and because the parties' agreements could never be enforced by an arbitral tribunal "unless the tribunal could make rulings that affect DTH's relationship with its employees *insofar as those employees were or became members of the Company Management Team.*" A-1186 ¶ 6 (emphasis in original).

**2.    *The Tribunal Issued the March 15 Order After Terra/DTH Blatantly Failed to Comply with the Tribunal's November 12 Order***

Terra/DTH did not comply with, and, in fact, willfully ignored the November 12 Interim Order. As a result, the Tribunal and the parties engaged in an extensive process in which the parties made multiple submissions and participated in a four (4) hour hearing:

- On November 23, 2021, the Company detailed Terra/DTH's non-compliance with the November 12 Interim Order, while Terra/DTH purported to confirm compliance (SA0715; SA0719);

- On December 3, 2021, the Company again detailed Terra/DTH's non-compliance (SA0725-29);

- In late November and early December 2021, Terra/DTH made numerous submissions relating to their unfounded allegations against Mr. Gaitan in a further attempt to remove him from his role at the Company—all in contravention of the November 12 Interim Order (*see, e.g.*, SA0732; SA0403);

- On January 11, 2022, the Company again submitted a letter detailing Terra/DTH's failure to comply with the November 12 Interim Order (A-1670-78);

- On January 26, 2022, Peppertree/AMLQ submitted their Motion to Compel Compliance with the November 12 Interim Order (SA0779);

- On January 27, 2022, the Company informed the Tribunal by letter that Terra/DTH continued their retaliatory attacks on Mr. Gaitan by filing a criminal complaint against him in Guatemala because he testified in the Arbitration (SA0790);

- On January 28, 2022, all parties submitted witness statements and exhibits in connection with the Motion to Compel Compliance (SA0921);

- On February 7, 2022, all parties submitted responsive witness statements and exhibits (SA1338), and Terra/DTH submitted a brief in opposition to the Motion to Compel Compliance (SA0806);

- On February 12, 2022, the Tribunal conducted a four (4) hour oral argument hearing on the Motion to Compel Compliance (SA0411); and

- On February 15, 2022, DTH made a post-hearing submission. SA0797.

On March 15, 2022, the Tribunal issued yet another ***unanimous*** interim order, finding that Terra/DTH had failed to comply with the November 12 Interim Order (the "March 15 Interim Order"). A-1686-1701. The Tribunal ordered that "DTH shall cause its subsidiaries in Guatemala, Costa Rica, and Panama . . . to publish forthwith" certain corrective statements "reaffirm[ing] the ongoing roles of [Management] in [their] company as fully authorized executive management of [their] affiliate [the Company]," and that DTH submit proof of compliance. A-1693-94 ¶¶ 13-14. The Tribunal expressly found that prior publications by these same DTH subsidiaries violated the November 12 Interim Order and had "negative effects" on Management's roles for the Company. A-1692-93 ¶ 12. The Tribunal reserved the right to allocate costs and fees. A-1694 ¶ 15.[5]

---

[5] On August 12, 2022, the Tribunal unanimously issued the Second Partial Final Award ("SPFA"), sanctioning Terra for failing to comply with the Interim Orders and instead engaging in a "multi-faceted effort […] to present th[e] Tribunal and the Company's Board a ***false narrative*** of misconduct and criminality by" Company Management. SA1961 ¶ 9 (emphasis added).

## G.    The District Court Confirmed the Tribunal's FPFA

On March 2, 2022, Peppertree/AMLQ filed a petition in the District Court to confirm the FPFA.  ECF No. 7.  On April 1, 2022, Terra/DTH filed a cross-petition to vacate the FPFA and the Interim Orders.  ECF No. 27.

In a Memorandum Opinion dated January 18, 2023, the Judge Kaplan ***granted*** Peppertree/AMLQ's petition to confirm the FPFA and denied Terra/DTH's cross-petition to vacate the FPFA and Interim Orders.  Specifically, he found, in relevant part: (i) "the [Tribunal's] decision to phase the Arbitration was well within the [Tribunal's] broad discretion over procedural aspects of the arbitration, including choosing to bifurcate the proceedings when appropriate" (SPA-13); (ii) "the [Tribunal's] decision to deny [Terra/DTH's] discovery requests during Phase 1 was within the [Tribunal's] discretion to vary procedure and deny discovery" (SPA-14); and (iii) the Interim Orders were "not final and reviewable by this Court," and in any event, would not be subject to vacatur in part because "it was within the [Tribunal's] authority to order [Terra/DTH] to restore the Management Team to its positions at the Company."  SPA-19.

Terra filed a notice of appeal from the District Court's judgment on January 31, 2023 (A-1816), and amended their notice of appeal, adding DTH as an appellant, on February 17, 2023.  A-1817.

## STANDARD OF REVIEW

This Court reviews a "district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions, and [] review[s] any findings of fact for clear error." *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 867, 868 (2d Cir. 2020) (citing *Duferco*, 333 F.3d at 388).

Courts afford great deference to an arbitration panel's award, and thus "[a]rbitration awards are subject to very limited review." *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 370 (S.D.N.Y. 2010). "The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the [FAA]." *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (internal citations omitted). A federal court may not vacate an arbitral award merely because it disagrees with the panel's decision. *Banco de Seguros del Estado,* 344 F.3d at 260. The award must be confirmed if there is a "***barely colorable*** justification for the outcome reached." *Id.* (emphasis added). Furthermore, "[a]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013).

Terra/DTH, on the other hand, face an extremely high burden in seeking to vacate an arbitration award. Vacatur is rare because the purpose of arbitration is to

enhance efficiency and avoid litigation. *Hamerslough v. Hipple*, 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 24, 2012). Interfering with the arbitration process would "thwart" the usefulness of arbitration, making it the "commencement, not the end, of litigation." *Id.* (citing *Duferco*, 333 F.3d at 389).

The FAA outlines only four limited bases upon which an award may be vacated: where (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). Further, in extremely rare and limited circumstances, a court may vacate an award where it was rendered in "manifest disregard of the law". *Duferco*, 333 F.3d at 389. Review under the judicially-created "manifest disregard" doctrine is "severely limited." *Id.*

## SUMMARY OF THE ARGUMENT

The FPFA and Interim Orders are not subject to vacatur, as Judge Kaplan of the District Court correctly found.

***First and foremost***, the 44-page, ***unanimous*** FPFA is the product of a fundamentally fair process during which the parties submitted over 100 pages of briefing, 8 witness statements, and over 70 exhibits, and partook in an all-day hearing. In the FPFA, the Tribunal expressly found that Terra/DTH breached Section 5.04(b) of the Shareholders Agreement, and that Peppertree/AMLQ were entitled to specific performance pursuant to both New York law and the Tribunal's powers under the AAA Commercial Rules. In addition, the Tribunal acted well within its discretion in denying Terra's request for discovery. When pressed, Terra could not articulate the relevance of the discovery it sought to the Proposed Sale Notice. The reason is obvious: the discovery was wholly immaterial. Under long-settled law, the FPFA is not subject to vacatur.

***Second***, the Interim Orders are not subject to judicial review. Notwithstanding Terra/DTH's attempt to retitle the November 12 Interim Order as an "award," by its explicit terms, it is a non-final *interim* order. Not only was it expressly styled as an order for "interim" relief, it specifically states that it was entered pursuant to AAA Rule R-37, which governs "Interim Measures". Moreover, it does not "finally" or "definitively" resolve any claims in the Arbitration; rather, it

- 23 -

expressly contemplates "further proceedings" before the Tribunal and reserved allocation of fees and costs. In fact, the Tribunal later revisited that order, and Terra/DTH's failure to comply with it, in the March 15 Interim Order, and revisited both Interim Orders in the SPFA. Finally, Terra/DTH's unauthorized removal and harassment of Company Management—the subject of the Interim Orders—is not the very matter that either party wanted arbitrated.

*Third*, the Tribunal acted well within its authority in issuing the Interim Orders. Those orders do not require the DTH *subsidiaries* to do anything, as Terra/DTH claim; rather, both require that ***DTH*** restore Company Management to their prior positions. Moreover, as set forth below, the specific relationships among the Company, Terra, and DTH, and the framework of the Company's governing documents, confirm that the Tribunal has jurisdiction to order DTH to cause its subsidiaries to take certain actions related to the Company.

Accordingly, this Court should affirm the District Court's decision because it properly confirmed the FPFA and denied Terra/DTH's cross-petition to vacate the FPFA and Interim Orders.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT THE PHASE 1 PROCEEDINGS WERE FUNDAMENTALLY FAIR

Terra/DTH[6] contend that the FPFA should be vacated because: (a) it stemmed from a fundamentally unfair proceeding; (b) the Tribunal found that New York law controlled the proceeding, but then disregarded New York law; (c) the Tribunal applied the wrong law; and (d) the Tribunal refused to permit Terra to engage in discovery to substantiate its affirmative defenses. These contentions are meritless. First, the Tribunal conducted a fundamentally fair Phase 1 proceeding. Second, the Tribunal afforded Terra/DTH ample opportunity to be heard during Phase 1. Third, Terra/DTH fail to meet their heavy burden to show that the Tribunal manifestly disregarded New York law. It did not. As the FPFA itself shows, the Tribunal

---

[6] In their brief, Terra/DTH wrongly claim that the Tribunal "refus[ed] to permit **Appellants** [defined as both Terra and DTH] any opportunity to substantiate their equitable defenses" to Peppertree/AMLQ's Phase 1 claim for the sale of the Company (Br. at 28 (emphasis added)), thereby suggesting that DTH was somehow a party to this claim. *See also* Br. at 24 (claiming "[t]he panel . . . denied Terra **and DTH** discovery to substantiate affirmative defenses to specific performance under New York law" (emphasis added)). DTH is not a shareholder of the Company and has no authority to make any decisions regarding whether the Company is sold; therefore, DTH was not a party to the Phase 1 contractual sale claim, which Peppertree/AMLQ brought against Terra only. This is well-documented in the Phase 1 submissions, in which DTH properly did not participate. *See, e.g.*, A-1018-1127. Terra/DTH's claims that *they* were denied the opportunity to substantiate affirmative defenses are patently false because *DTH* never alleged any such defenses in the first instance. Thus, DTH has no basis upon which to dispute or appeal issuance of the FPFA.

considered each of Terra's affirmative defenses and New York law.  Fourth, the Tribunal acted well within its broad discretion in denying Terra discovery.

### A.    The FPFA Is the Product of a Fundamentally Fair Process

In the Second Circuit, a court's review of an arbitration proceeding "is restricted to determining whether the procedure was fundamentally unfair." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013); *see also Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 352 (S.D.N.Y. 2014) ("[F]ederal courts do not superintend arbitration proceedings" but, instead, their "review is restricted to determining whether the procedure was fundamentally unfair.").  A proceeding is fundamentally unfair only if the arbitrator does not "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Source One Staffing LLC*, 2017 WL 2198160, at *1 (S.D.N.Y. May 17, 2017).  As Judge Kaplan correctly recognized, the FPFA stems from the Tribunal's "consideration of the parties' extensive submissions and oral argument during an all-day hearing."  SPA-6.  This robust and fulsome process was fundamentally fair.

Throughout Phase 1, the parties submitted argument and evidence in support of their positions to the Tribunal.  On September 27, 2021, the parties submitted their Phase 1 opening memorials which, combined, totaled more than 66 pages of argument, 64 exhibits, and six (6) witness statements related to the sale claim.  A

1018-1127. On October 28, 2021, the parties submitted their responsive Phase 1 memorials, which contained additional argument, seven (7) exhibits, and two (2) witness statements related to the sale claim. A-1709-96. On November 15, 2021, the parties provided written responses to 12 questions from the Tribunal regarding the Phase 1 sale claim. A-1797-1815. On December 1, 2021, the Tribunal conducted an all-day hearing on Phase 1, which produced nearly 300 transcript pages of argument related to Peppertree/AMLQ's sale claim. Although this robust process was supposed to conclude Phase 1, the Tribunal, at Terra's request, allowed the parties to submit post-hearing briefs. SA0645-76. Terra/DTH cannot "show[] that the arbitrator failed to provide [it] with a fair hearing" where, as here, it "had several opportunities to present its evidence and argument." *Tradiverse Corp. v. Luzar Trading, S.A.*, 2019 WL 2433605, at *2 (S.D.N.Y. June 11, 2019). Under binding Second Circuit precedent, this process was fundamentally fair.

**B.** **Terra Had Multiple Opportunities to Be Heard Regarding Whether AAA Commercial Rule R-47 or New York Law Governed the Relief Requested by Peppertree/AMLQ**

Terra/DTH next contend that the Tribunal denied Terra a meaningful opportunity to be heard because it "conducted the entire proceeding on the premise that New York law governed the question of specific performance," but then used the AAA Commercial Rules to justify its grant of specific performance. Br. at 26. This argument ignores that the Tribunal heard and considered Terra's multiple

- 27 -

arguments on this issue and, further, considered and applied New York law of contractual remedies in awarding specific performance.

**First**, as detailed above, Terra had ample opportunity to be heard in Phase 1. With regard to whether specific performance is governed by New York law or the AAA Commercial Rules, Terra/DTH contend that the Tribunal, "*sua sponte* and for the first time" at the December 1, 2021 Phase 1 hearing, stated "that the question of specific performance might be governed by AAA Commercial Rule R-47, rather than New York law." Br. at 25. Terra/DTH conveniently omit, however, the fact that Terra submitted *two* post-hearing briefs that addressed Phase 1 issues, one on December 9, 2021, and one on January 13, 2022. Ironically, in Terra's January 13, 2022 post-hearing submission, it took the position that "[s]pecific performance is an *equitable remedy*," and that AAA Commercial Rule R-47 permits the Tribunal to "invoke its equitable powers . . . in order to do justice." SA0669. The record before this Court demonstrates that Terra not only had multiple opportunities to address the Tribunal's statement, but that Terra ultimately took the position that AAA Commercial Rule R-47 both governed the specific performance relief requested by Peppertree/AMLQ and gave the Tribunal broad, equitable authority. Regardless, there was "no fundamental unfairness" because "the parties were given notice that the" Tribunal would be addressing the AAA Commercial Rule R-47 issue, and "they had the opportunity to file written submissions with the [Tribunal] setting forth their

views on the issue." *NYKCool A.B. v. Pacific Fruit, Inc.*, 507 F.App'x 83, 88-89 (2d Cir. 2013).

***Second***, Terra/DTH's argument that the Tribunal granted specific performance pursuant to AAA Commercial Rule R-47—to the exclusion of New York law—blatantly mischaracterizes the FPFA. As the District Court rightly found, the Tribunal "concluded that it was authorized to order specific performance of the [Shareholders Agreement's] sale provision ***on several bases, including New York law of contractual remedies***." SPA-15 (emphasis added). Specifically, the Tribunal found that (1) its "'remedial powers are derived from the parties' contract' and therefore that their power to grant specific performance was controlled by Section 8.12 of the [Shareholders Agreement], which entitled the parties to specific performance of all of the [Shareholders Agreement's] terms" (SPA-15-16); (2) "AAA Commercial Rule R-47(a) permitted them to 'grant any remedy or relief that the arbitrator deems just and equitable within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract" (SPA-16); and (3) "even if New York law governed the availability of specific performance, [Peppertree/AMLQ] had satisfied its requirements." *Id*. Contrary to Terra/DTH's contention, the Tribunal did not ignore New York law; it applied it.[7]

---

[7] Even if, as Terra/DTH contend, the Tribunal relied on AAA Commercial Rule R-47 to the exclusion of New York law (which it did not), it would not be grounds for vacatur. In the Shareholders Agreement, Terra expressly agreed that AAA's

### C.    The Tribunal Did Not Manifestly Disregard New York Law

Terra/DTH next contend that the FPFA should be vacated because the Tribunal manifestly disregarded New York law.  A party "seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).  To meet their "heavy burden," Terra/DTH must: (1) make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it, and (2) demonstrate that the disregarded legal principle was "well defined, explicit, and clearly applicable."  *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021).  For the reasons below, Terra/DTH's arguments fall far short of this high bar.

To begin, Terra/DTH's argument falls flat because they fail to identify, let alone establish, any "well-defined, explicit, and clearly applicable" law that the Tribunal manifestly disregarded.  *See Schwartz v. Merrill Lynch Co*., 665 F.3d 444, 452 (2d Cir. 2011).  To defeat Peppertree/AMLQ's Phase 1 claims, Terra was

---

Commercial Arbitration Rules would apply in the underlying arbitration.  A-76-77 § 8.15.  Terra therefore agreed to vest the Tribunal with authority to award specific performance pursuant to AAA Commercial Rule R-47(a).  *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 982 (2d Cir. 1996) (AAA's Commercial Arbitration Rules considered part of the parties' contract where the arbitration clause specifically incorporates those Rules).

obligated to present the Tribunal with case law or other authority demonstrating that merely asserting any one of Terra's affirmative defenses is sufficient to preclude specific performance. Because Terra was unable to do so, Judge Kaplan properly held that the Tribunal did not manifestly disregard applicable law (as detailed below).

Moreover, Terra/DTH's contention that the Tribunal ignored New York law concerning Terra's affirmative defenses is incorrect. To the contrary, the Tribunal painstakingly considered each of Terra's affirmative defenses one-by-one, as well as the New York case law cited by the parties:

- The Tribunal considered, and rejected, Terra's affirmative defenses of repudiation and anticipatory repudiation, finding that **New York law** requires the repudiating party to make a "sufficiently clear and unequivocal" statement, and that Terra was unable to identify any such statement (A-843 ¶ 56 n.12);

- The Tribunal considered, and rejected, Terra's affirmative defense of failure to state a claim on two separate grounds, noting that "***under New York law***," specific performance is a remedy, not a cause of action (*id.* (emphasis added));

- The Tribunal considered, and rejected, Terra's affirmative defense of equitable estoppel on the ground that Peppertree/AMLQ were not "seek[ing] to enforce the Torrecom offer, and the [FPFA] does not decree performance based on the Proposed Sale Notice that presented the Torrecom Offer," which was the only basis for equitable estoppel "raised by [Terra]" (*id.* n.13);

- The Tribunal considered, and rejected, Terra's affirmative defense of unclean hands on the ground that Terra failed "to identify any controlling authority under **New York contract law** holding (specifically or by implication) that merely raising a defense of unclean

hands prevents the granting of specific performance, in an arbitration where New York contract law governs, until the merits of that defense are determined" (A-844 ¶ 57 (emphasis added)); [8]

- The Tribunal considered, and rejected, Terra's affirmative defense of waiver, finding that **New York law** requires an "intentional relinquishment of a known right," (A-828 ¶ 33) but that Peppertree/AMLQ's conduct "is best viewed not as waiver but as a resort to arbitration in furtherance of their rights", (A-829 ¶ 35); and

- With regard to Terra's shareholder oppression affirmative defense, the Tribunal found that "forced sale of [Peppertree/AMLQ's] shares to [Terra] is foreclosed by the SHA" (A-848 ¶ 63), and that "[t]o find otherwise [the Tribunal] would have to ignore the express exclusion of the New York choice-of-law rules from the New York law we are empowered to apply to the SHA." *Id.* ¶ 64.

Thus, Terra/DTH fail to meet their heavy burden to show that the Tribunal manifestly disregarded New York law.

---

[8] Terra/DTH's unremarkable assertions that the equitable defenses they raised are "matters of substantive law" and that "[f]ederal courts in this district sitting in diversity routinely look to New York substantive law" miss the mark. *See* Br. at 26-27. The issue the Tribunal addressed was whether, under New York law, Terra's affirmative defenses bar specific performance, and none of Terra/DTH's authority supports the proposition that they do. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667-68 (2014) (laches cannot preclude adjudication of a timely damages claim in Copyright Act cases and may only bar "equitable relief[] in extraordinary circumstances"); *Abbott Lab'ys v. Feinberg*, 506 F. Supp. 3d 185, 202 (S.D.N.Y. 2020), *aff'd,* 2023 WL 19076 (2d Cir. Jan. 3, 2023) (unclean hands did not bar action for replevin); *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 113-14, 122-23 (S.D.N.Y. 2020) (awarding plaintiff summary judgment on liability for a breach of contract claim but declining to specify a remedy; denying defendant summary judgment based on unclean hands and laches on plaintiff's equitable claims).

### D. The Tribunal Acted Well Within Its Broad Discretion in Denying Terra Discovery on Its Affirmative Defenses

Terra/DTH's contention that it was unfair of the Tribunal to deny discovery is belied by established law, the AAA Commercial Rules which govern the Arbitration, and the record before this Court. Although "[a]rbitrators must give each of the parties to the dispute an adequate opportunity to present its evidence and argument, [they] need not follow all the niceties observed by the federal courts such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence." *Oracle Corp. v. Wilson,* 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (internal citations omitted). To warrant vacatur, "the challenging party must show that his right to be heard has been ***grossly and totally blocked***, and that this exclusion of evidence prejudiced him." *Id*. (emphasis added).

Terra/DTH have not made—and cannot make—this showing. Indeed, courts have consistently confirmed awards where arbitrators, in their discretion, denied discovery or declined to hear evidence in the first phase of a bifurcated proceeding. *See, e.g., Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc*., 211 F. Supp. 3d 505 (E.D.N.Y. 2016) (confirming award where arbitrator excluded certain evidence in first phase of bifurcated proceeding); *see also Duferco, S.A. v. Tube City IMS, LLC*, 2011 WL 666365, at *5 (S.D.N.Y. Feb. 4, 2011) (same). [9]

---

[9] Terra/DTH's cases regarding discovery and the exclusion of evidence (*see* Br. at 22, 29) are inapposite and affirm that vacatur for an evidentiary ruling is available

As the District Court correctly found, Terra/DTH "had ample opportunity to be heard during the Phase 1 proceedings" but "failed to identify any specific category of discovery that was necessary to determination of the Phase 1 issue." SPA-14. Even here, Terra/DTH claim that Terra's unclean hands defense was based on Peppertree/AMLQ's alleged "underhanded attempt to manufacture a sale of the Company to themselves, at a deflated price, and block DTH and Terra from competing in the market." Br. at 29 (referring to the proposed Torrecom offer). As the Tribunal found in the FPFA, however, Peppertree/AMLQ did "not seek enforcement of the Torrecom offer" in Phase 1, and the FPFA "does not decree

---

only where the party demonstrates prejudice. *See Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S. A.*, 300 F. Supp. 179, 181–82 (S.D.N.Y. 1969) (vacatur unavailable where "allegations of prejudice [were] distressingly conclusory"). Such prejudice exists only if the excluded evidence relates to issues that are actually central to the dispute. *See PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (discovery needed to determine elements of dispositive collateral estoppel argument); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (testimony improperly omitted as cumulative where admitted documentary evidence addressed different claims); *Home Indem. Co. v. Affiliated Food Distributors, Inc.*, 1997 WL 773712, at *5 (S.D.N.Y. Dec. 12, 1997) (vacating award issued "without even a glance at the underlying dispute or its possible merits"); *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000) (award issued "without holding an evidentiary hearing"); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) (affirming vacatur for exclusion of evidence that "was both 'central and decisive' to the Company's position"); *see also Cofinco, Inc. v. Bakrie & Bros., N. V.*, 395 F. Supp. 613, 615–16 (S.D.N.Y. 1975) (vacating award where arbitrators heard evidence in violation of their own rules). Here, as the Tribunal found and Judge Kaplan confirmed, Terra failed to demonstrate that the matters it sought discovery about were even at issue in Phase 1. SPA-14.

performance based on the Proposed Sale Notice that presented the Torrecom offer." A-843 ¶ 56 n.13. Stated differently, Terra's affirmative defense of unclean hands was based on a wholly separate proposed sale notice—one that was *not* at issue in Phase 1.

Terra/DTH's contention that Terra needed discovery to substantiate its waiver defense, which "was based on Peppertree's failure to hold (or even attempt to call) a board meeting after sending the January 19 Notice," fares no better. Br. at 30. The Tribunal found, as a matter of contractual interpretation, that, because the Shareholders Agreement "did not clearly impose" a duty on Peppertree to call a Board meeting after sending the Proposed Sale Notice, Peppertree "could not have known that [it] [was] forfeiting the right to consummate the Approved Sale by failing to call a Board meeting." A-828 ¶ 33. This finding was wholly consistent with the plain language of the Shareholders Agreement (*see* A-56 § 5.04(b)(ii)), and no amount of discovery could have altered its terms.

## II.     THE DISTRICT COURT CORRECTLY HELD THAT THE INTERIM ORDERS ARE NOT SUBJECT TO JUDICIAL REVIEW AND THAT THE TRIBUNAL ACTED WITHIN ITS POWERS IN ISSUING THEM

Terra/DTH next contend that the Interim Orders (a) are subject to judicial review and (b) exceeded the Tribunal's authority. Both arguments fail.

## A.     The Interim Orders Are Not Subject to Judicial Review

Contrary to Terra/DTH's claim, the November 12 Interim Order was not a final award that rendered the Tribunal *functus officio*.  As case law invoked by Terra/DTH makes clear, for an order to be final, it must "resolve all the issues submitted to arbitration, and . . . it must resolve them definitely enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication."  *Rocket Jewelry Box, Inc. v. Noble Gift Packing, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis in original).  An interim order is not final and reviewable where further proceedings may affect the viability of the relief ordered, or the panel may be able to revisit the order.  *See Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 598, 604 (S.D.N.Y. 2020) (order providing that the panel "may still revisit" the allocation of fee issue was not final); *SH Tankers Ltd. v. Koch Shipping Inc.*, 2012 WL 2357314, at *1, *5-6 (S.D.N.Y. June 19, 2012) (order where panel expressed its willingness to "revisit and reassess" the ruling was neither final nor reviewable).

In assessing whether an order is final and thus subject to review, courts have distinguished between a "procedural matter" that would be an "early step in moving toward the end result" and an order that "resolved the dispute [over] the very issue [the claimant] wanted arbitrated."  *See, e.g.*, *Publicis Commc'n v. True North*

*Commc'ns, Inc.*, 206 F.3d 725, 728-29 (7th Cir. 2000) (finding that relief granted in tribunal's interim measures was the "whole ball of wax" and thus reviewable).

Notwithstanding Terra/DTH's attempt to retitle the November 12 Interim Order as an "award," it is a non-final interim order by its express terms. The Tribunal styled it as an order for "interim" relief and the order specifically states that it was entered pursuant to AAA Rule R-37, on "Interim Measures." *See* AAA Rule R-37 ("The arbitrator may take whatever **interim** measures he or she deems necessary, including injunctive relief . . . .") (emphasis added). Moreover, it does not "finally" or "definitively" resolve any claims in the Arbitration; rather, it expressly contemplates "further proceedings" before the Tribunal and reserves allocation of fees and costs. A-1188 ¶¶ 13-14. In fact, the Tribunal did revisit November 12 Interim Order in its March 15 Interim Order, which expressly related to Terra/DTH's failure to comply with it, and then revisited both Interim Orders in the SPFA. *See generally* A-1686-1701; SA1961-79. Finally, the unauthorized removal and harassment of Management is not the very matter that either party wanted arbitrated. As the Tribunal noted in the SPFA, this issue is "collateral to still unresolved merits claims, including claims by Peppertree/AMLQ for damages allegedly caused by misappropriation of Company funds by DTH." SA1974 ¶ 40(2). The question of which persons have unfettered access to Company and DTH records—the heart of the November 12 Interim Order—is a procedural matter,

affecting how the merits claims will be presented to the Tribunal; it does not come close to the "whole ball of wax" in this Arbitration. *See Publicis*, 206 F.3d at 729.

Terra/DTH's cases purporting to establish that the November 12 Interim Order was, in fact, a final award all miss the mark. *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986) concerned an award that "finally and conclusively disposed of a separate and independent claim" (liability for outstanding maritime freight charges); *JLNW, Inc. v. National Retirement Fund*, 2018 WL 4757953, at *4 (S.D.N.Y. Sept. 28, 2018) involved an award addressing the applicability of a certain section of the labor statute; and *Ecopetrol S.A. v. Offshore Exploration & Production LLC*, 46 F. Supp. 3d 327, 331, 337 (S.D.N.Y. 2014) concerned an award determining a party's indemnification liability under a stock purchase agreement. Each of these cases involved awards resolving legal issues that were critical to the parties' claims submitted for arbitration. In stark contrast, the November 12 Interim Order addressed the collateral issue of preserving the status of Company Management during the pendency of the Arbitration and, as discussed above, expressly contemplated further proceedings on the issue. Accordingly, Terra/DTH fail to establish that the November 12 Interim Order was a reviewable award that rendered the Tribunal *functus officio*.

**B.     The Interim Orders Did Not Exceed the Tribunal's Jurisdiction**

Terra/DTH's next argument—that the Tribunal exceeded its jurisdiction in "attempt[ing] to bind subsidiaries of DTH" in issuing the Interim Orders—likewise fails.  Br. at 33.  Those orders do not, as Terra/DTH claim, require the DTH *subsidiaries* to do anything; rather, the November 12 Interim Order requires that "***DTH*** immediately restore Jorge Gaitán and Carol Echeverria to the Company positions they occupied as of March 19, 2021" (A-1188 ¶ 12 (emphasis added)), and the March 15 Interim Order requires "***DTH*** [to] cause its subsidiaries in Guatemala, Costa Rica, and Panama . . . to publish" certain corrective notices.  A-1693 ¶ 13 (emphasis added).[10]   Courts routinely uphold arbitration awards that direct an ***arbitration party*** to cause a non-party to act.  *See, e.g.*, *Soleimani v. Andonian*, No. 2022 WL 748246, at *5 (S.D.N.Y. Mar. 10, 2022) (denying petition to vacate arbitration award that "d[id] not purport to bind anyone other than [the party]"); *Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge W-260*, 996 F. Supp. 2d 559, 571 (E.D. Mich. 2014) (denying petition to

---

[10] Because the Interim Orders bound ***DTH***, not its subsidiaries, Terra/DTH's claim that DTH's subsidiaries are bound by a different dispute resolution clause is irrelevant.  *See* Br. at 33.  And the Tribunal could not have "usurped the jurisdiction of the local courts" when the appointment and removal of Company Management is squarely governed by the Shareholders Agreement and thus subject to its arbitration provision.  *See id.*

vacate award that bound arbitration party to cause non-party subcontractor to reinstate its union workers).

Moreover, the specific relationships among the Company, Terra, and DTH, and the framework of the Company's governing documents, confirm that the Tribunal has jurisdiction to order DTH to cause its subsidiaries to take certain actions related to the Company. *First*, DTH is a holding company without any employees. It cannot be permitted to do through its subsidiaries what it is otherwise prohibited from doing on its own behalf. This is a commonplace corporate structure. *See, e.g.*, *Harte v. Ocwen Fin. Corp.*, 2016 WL 1275045, at *7-8 (E.D.N.Y. Mar. 31, 2016) (finding strong inference that holding company and subsidiaries were in an agency relationship where holding company acted *only* through its subsidiaries). Courts do not permit parties to use operating subsidiaries to make an end-run around court orders. *See, e.g.*, *Cablevision Sys. Corp. v. Can Muneyyirci*, 1995 WL 362541, at *2 (E.D.N.Y. June 2, 1995) (party could not use a non-party "subject to their control" as "a device to circumvent the Court's orders"); *Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 1993 WL 155511, at *1 (N.D. Ill. May 10, 1993) (finding that the parties' stipulation restricting defendant's sale of memory cards applied equally to defendant's foreign subsidiaries).

*Second*, the governing documents here expressly recognize that DTH operates through its subsidiaries and will cause its subsidiaries to take certain actions related

to the Company. *See, e.g.*, A-277 §§ 1.1(e) ("In connection with each Approved Site, DTH, ***directly or through the DTH Entities in each jurisdiction in the Territory***, shall oversee such approved Site's search, development, and construction.") (emphasis added); 1.1(f) ("DTH will provide, or will ensure that the ***DTH Entities provide*** . . .") (emphasis added). Thus, DTH contracted not only on its own behalf but as an agent for its subsidiaries. Additionally, if DTH's subsidiaries were permitted to take actions in contravention of agreements and orders to which DTH is bound, such agreements and orders would be rendered meaningless. *See, e.g., In The Matter of Arbitration Between Am. Indus. Carriers, Inc. v. Maywood Maritime Ltd.*, 1992 WL 84536, at *5-6 (S.D.N.Y. Apr. 10, 1994) (members of arbitration party who were not signatories to the arbitration agreement were bound by arbitration award because it was "an uncontested fact that [the party's name]" "was used as a collective referent in the context of negotiating" the agreements between the parties).

***Finally***, injunctions are routinely held to bind parties' ***non-party*** officers, agents, servants, and "other persons" to the extent they "are in active concert or participation with [the parties]." *NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir. 2012); *see also Cablevision Sys. Corp.*, 1995 WL 362541, at *1 (issuing order that both a party and a non-party acted in contempt of a prior court order, prohibiting them from dealing in certain devices where the nonparty entity

was controlled by the two defendants, and finding that "***an injunction is binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them***" when it so provides (emphasis added) (citations omitted)); *United States v. Philip Morris USA Inc*., 566 F.3d 1095, 1136 (D.C. Cir. 2009) ("[S]ubsidiaries of Defendants may be personally bound by the [injunction] order to the extent that they are agents of or in privity with Defendants in the common corporate business of manufacturing, designing, marketing, or selling cigarettes."). Here, because Terra/DTH admit that all of DTH's affiliates and subsidiaries are under the common ownership and control of Mr. Hernandez, an individual respondent in the Arbitration (*see* SA2026 ¶ 13), there is no question that the DTH subsidiaries are effectively agents of DTH and acting in concert with Terra/DTH. The Tribunal therefore has the authority to prevent DTH from using its subsidiaries to circumvent the November 12 and March 15 Interim Orders.

## CONCLUSION

For the foregoing reasons, the District Court's judgment should be affirmed.

Dated: August 1, 2023

By: */s/ Michael N. Ungar*
Michael N. Ungar
Katherine M. Poldneff
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax: (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

Respectfully submitted,

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com

Daniel V. Ward
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7) because this document contains fewer than 13,000 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface in 14- point Times New Roman.

*/s/ Gregg L. Weiner*
Gregg L. Weiner