# 23-0144-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————◆———————————

TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC,
AMLQ HOLDINGS (CAY), Ltd.,

*Petitioners-Appellees,*

– v. –

TERRA TOWERS CORP., TBS MANAGEMENT, S.A.,

*Respondents-Appellants,*

DT HOLDINGS, INC.,

*Cross-Claimant-Appellant.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR RESPONDENTS-APPELLANTS

JUAN J. RODRIGUEZ
LUKE T. JACOBS
CAREY RODRIGUEZ, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 356-5481

*Attorneys for Respondents-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ...........................................................................1

SUMMARY OF ARGUMENT ..........................................................2

UNDISPUTED FACTS ....................................................................6

ARGUMENT .................................................................................8

    I.    The First Partial Final Award Should be Vacated Because
Terra was Denied its Right to a Fundamentally Fair Process ..............8

        A.    It Was Fundamentally Unfair to Deny Terra the
Opportunity to Discover Evidence to Support
its Defenses ...................................................................8

        B.    It Was Fundamentally Unfair for the Panel to Instruct
the Parties to Prepare Their Cases in Accordance With
New York law, and then Disregard New York Law ...............11

            1.    A "Post-Hearing Brief" on Discovery Does not
Remedy the Fact that Terra had Prepared Its
Entire Case to Conform to New York Law ...................11

            2.    The Panel's Decision to Rule in the Alternative
that New York Law Also Supported Specific
Performance was only an Attempt to Protect
its Award ........................................................13

    II.    The November 12 Award and March 15 Award should be
vacated because the arbitrators exceeded their power. .......................14

        A.    The November 12 Award and the March 15 Award
were Sufficiently Final..............................................14

        B.    The Panel Exceeded its Authority by Addressing
Rights and Obligations of Third Parties. .................18

CONCLUSION ............................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*British Ins. Co. of Cayman v. Water Street Ins. Co., Ltd.*,
  93 F. Supp. 2d 506 (S.D.N.Y. 2000) ....................................................................17

*Cablevision Sys. Corp. v. Can Muneyyirci*,
  No. 90 Civ. 2997 (RJD), 1995 WL 362541 (E.D.N.Y. June 2, 1995) .......... 19-20

*Colonial Penn Ins. Co. v. Omaha Indem. Co.*,
  943 F.2d 327 (3d Cir. 1991) .................................................................................21

*Decorative Panels International, Inc. v. International Ass'n of Machinists
  and Aerospace Workers Local Lodge W-260*,
  996 F. Supp. 2d 559 (E.D. Mich. 2014) ..............................................................19

*Domino Group, Inc. v. Charlie Parker Mem. Foundation*,
  985 F.2d 417 (8th Cir. 1993) ...............................................................................21

*Duferco, S.A. v. Tube City IMS, LLC*,
  2011 WL 666365 (S.D.N.Y. Feb. 4, 2011) ..........................................................10

*Feingberg v. Katz*,
  No. 01 Civ. 2739 (CSH), 2003 WL 260571 (S.D.N.Y. Feb. 5, 2003) ................20

*Home Indem. Co. v. Aff. Food Distribs., Inc.*,
  1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) .........................................................8

*Hoteles Condado Beach v. Union De Tronquistas Local 901*,
  763 F.2d 34 (1st Cir. 1985)....................................................................................8

*Int'l Bus. Machines Corp. v. Comdisco, Inc.*,
  No. 91 Civ. 6777, 1993 WL 155511 (N.D. Ill. May 10, 1993)............................20

*Iran Aircraft Indus. v. Avco Corp.*,
  980 F.2d 141 (2d Cir. 1992) .................................................................................11

*Lindland v. U.S. Wrestling Ass'n, Inc.*,
  227 F.3d 1000 (7th Cir. 2000) .............................................................................21

*Lindsey v. Travelers Comm. Ins. Co.*,
  636 F. Supp. 3d 1181 (E.D. Cal. 2022) ..................................................................9

ii

*Matter of Arb. Between Advest, Inc. and Asseoff*,
No. 92 Civ. 2269 (KMW), 1993 WL 119690 (S.D.N.Y. April 14, 1993) ...........17

*Matthews v. Eldrige*,
424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ..........................................11

*Nationwide Mut. Ins. Co v. Home Ins. Co.*,
330 F.3d 843 (6th Cir. 2003) .................................................................................18

*NML Cap., Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ..................................................................................20

*NYKCool A.B. v. Pacific Fruit, Inc.*,
507 F. App'x 83 (2d Cir. 2013) .............................................................................12

*Oracle Corp. v. Wilson*,
276 F. Supp. 3d 22 (S.D.N.Y. 2017) ...................................................................8, 9

*Orion Shipping & Trading Co v. Eastern States Petroleum Corp.*
*of Panama, S.A.*,
312 F.2d 299 (2d Cir. 1963) ..................................................................................20

*Publicis Comm. v. True North Comms., Inc.*,
206 F.3d 725 (7th Cir. 2000) .................................................................................16

*S. Seas Nav. Ltd. of Monrovia v. Petroleos Mexicanos of Mexico City*,
606 F. Supp. 692 (S.D.N.Y. 1985) .................................................................. 15-16

*Sarhank Group v. Oracle Corp.*,
404 F.3d 657 (2d Cir. 2005) ..................................................................................19

*Schwartz v. Merrill Lynch*,
665 F.3d 444 (2d Cir. 2011) ..................................................................................13

*Soleimani v. Andonian*,
No. 21 Civ. 1018 (GWH), 2022 WL 74827
(S.D.N.Y. Mar. 10, 2022) ............................................................................... 18-19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Grp.*,
559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ...................................20

*Tempo Shain Corp. v. Bertek, Inc.*,
120 F.3d 16 (2d Cir. 1997) .....................................................................................8

*Trade & Trans., Inc. v. Nat'l Petro. Charters Inc.*,
  931 F.2d 191 (2d Cir. 1991) .................................................................21

*Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*,
  211 F. Supp. 3d 505 (E.D.N.Y. 2016) ....................................................9

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009)............................................................20

*Ward v. Ernst & Young U.S. LLP*,
  468 F. Supp. 3d 596 (S.D.N.Y. 2020) ...................................................17

*WMA Sec., Inc. v. Wynn*,
  105 F. Supp. 2d 833 (S.D. Ohio 2000), *aff'd*,
  32 F. App'x 726 (6th Cir. 2002) ...........................................................21

*Zeiler v. Deitsch*,
  500 F.3d 157 (2d Cir. 2007) .................................................................17

## Statutes and Other Authorities:

U.S. Const., art. III ...................................................................................20

9 U.S.C. § 10(a)(3) .....................................................................................8

9 U.S.C. § 10(a)(4)............................................................................. 14, 21

AAA Commercial Rule 37...........................................................................16

AAA Commercial Rule 47.................................................................. 6, 11, 12, 13

AAA Commercial Rule 47(a) ..............................................................5, 12

Fed. R. Civ. P. 65(d)(2).............................................................................20

iv

# INTRODUCTION

The main question before this Court is not whether the arbitral panel had the equitable power to order the sale of the Company, but rather, whether the arbitral panel reached that conclusion after allowing the parties a meaningful opportunity to be heard on that issue. Because Terra was denied its right to a fundamentally fair hearing under the Federal Arbitration Act, the First Partial Final Award ordering the sale of the Company should be vacated.

Terra was denied its meaningful opportunity to be heard because the panel refused Terra's requests to gather evidence to support its defenses to Peppertree/AMLQ's request for specific performance for the sale of the Company. The panel justified its decision to forego discovery because it stated it was only concerned with the legal sufficiency of Terra's defenses under New York law.

However, it ultimately became clear to the panel that it could not resolve the claim of specific performance under New York law without first resolving the factual issues raised by Terra's defenses. So, the panel changed the standard by which it would evaluate the specific performance claim in the middle of oral argument, and then, to the extent the award relied on New York law in the alternative, the panel drew conclusions regarding disputed issues of fact in favor of Peppertree/AMLQ. The panel did so to justify its decision to change the applicable standard mid-hearing.

1

Peppertree/AMLQ's most salient counterpoint is that Terra still made every effort to participate in the arbitration to the best of its ability, so Terra received a fulsome opportunity to be heard. That position finds no support in the law and would incentivize parties in arbitration to disrupt the process once it felt it had grounds to vacate a forthcoming arbitration award. Terra's decision to defend its case to the best of its ability in the arbitration, despite Terra's numerous objections to the procedure and the panel's decision to tie Terra's hands behind its back, does not resuscitate the panel's fundamentally unfair process.

The First Partial Final Award should be vacated.

## SUMMARY OF ARGUMENT

The process by which the arbitral panel arrived at the First Partial Final Award was fundamentally unfair.

The parties to this appeal are the shareholders of the Company, Continental Towers LATAM Holdings, Ltd. (the "Company"). Relevant here, the Shareholders Agreement, A27-80 ("SHA"), permitted Terra Towers Corp. and TBS Management, S.A. (together, "Terra") or Telecom Business Solution, LLC and LATAM Towers, LLC (together, "Peppertree") to request a sale of the Company after five years of its operation. Peppertree requested the Company be sold. Then, without sitting down with Terra to determine how the Company should be sold (a requirement under SHA § 8.14), Peppertree instead immediately turned to

2

arbitration. After the panel bifurcated the arbitration to expeditiously hear
Peppertree's request for specific performance, the panel rendered the First Partial
Final Award ordering the sale of the Company.

The panel arrived at its decision to award specific performance only after:

(1)     denying Terra any discovery into its defenses to specific performance;

(2)     changing the standard  by which the panel would decide the question
        of specific performance in the middle of the hearing—on its own
        volition; and

(3)     ignoring substantive principles of New York law to protect the panel's
        decision to change the framework pursuant to which it would analyze
        the specific performance claim—after briefing had closed.

While arbitral panels have broad discretion over the procedure to hear the
claims before it, the panel is required to give the parties an opportunity to be heard
"at a meaningful time and in a meaningful manner."

Terra was deprived of that right.

Terra raised the defenses of unclean hands, waiver, and equitable estoppel to
Peppertree's right to force a sale of the Company. To support Terra's defenses, it
moved for leave to serve discovery requests targeting those issues. The panel
denied Terra any discovery into its affirmative defenses (or into anything else)
based on the premise that the panel was only evaluating the legal sufficiency of
Terra's defenses as a matter of  New York law. In its award, however,  the panel
made findings of disputed fact in favor of Peppertree to support its rejection of

3

Terra's defenses. But because the burden was on Peppertree/AMLQ to show entitlement to specific performance, and because Terra was denied discovery to support its defenses, the panel should have drawn all inferences in favor of Terra. The panel's denial of Terra's right to discover evidence to support its' defenses deprived Terra of its meaningful opportunity to be heard.

Next, the panel repeatedly instructed the parties that New York law controlled its decision of whether to award specific performance. The parties submitted multiple briefs and supplemental memoranda to the panel on the issue of specific performance, which relied exclusively on precedent from the state of New York and the Second Circuit. Then, in the middle of oral argument, the panel—for the first time—raised the question of whether its ability to grant specific performance could be derived from the American Arbitration Association ("AAA") Commercial Rules rather than the substantive law of the contract that the parties agreed would control: New York law. The panel's game-time decision to change the body of law which governed the claim for specific performance denied Terra its meaningful opportunity to be heard.

The panel understood its decision to pivot from New York law to an arbitral equitable power raised fairness issues, so it attempted to protect its decision by analyzing specific performance under New York law anyways so as to claim New York law was instructive but not binding. But if the panel felt its decision to award

4

specific performance under New York law was legally sound, why would it have decided to award specific performance under an arbitrator's equitable power that no party had asked for—and pursuant to which never had the opportunity to be heard?

Finally, the panel's dismissal of Terra's defenses to specific performance under New York law was in manifest disregard of the law. Specific performance as an equitable remedy is substantive, not procedural under New York law. New York law is the substantive law under the parties' agreements. Equitable defenses apply to a determination to grant specific performance. Terra briefed the panel on these issues, at their request, but the panel still categorized Terra's defenses as "procedural" in its award, so as not to be constrained by the applicable law chosen by the parties. The panel's award then made findings of disputed fact in favor of Peppertree/AMLQ, after the panel had denied Terra's discovery requests into those exact facts. All to justify its granting of specific performance citing its own broad equitable powers under Rule 47(a) of the AAA Commercial Rules.

The First Partial Final Award should be vacated.

Aside from the First Partial Final Award, the panel's orders requiring a DT Holdings Inc.'s ("DTH") subsidiaries – non-parties to the arbitration – to take certain actions, are also partial awards which exceeded the panel's authority and must also be vacated.

5

# UNDISPUTED FACTS

The following facts are either conceded or undisputed by Peppertree, and AMLQ Holdings (Cay), Ltd. ("AMLQ") in their response brief. (ECF No. 84, hereinafter cited to as "PPT/AMLQ Br.").

- The panel denied all of Terra's discovery requests into its defenses to Peppertree/AMLQ's request for specific performance; (PPT/AMLQ Br. 33-34)

- The panel informed the parties that it would analyze the specific performance claim under AAA Rule R-47 for the first time at oral argument; (PPT/AMLQ Br. 28)

- Prior to the panel's pivot at oral argument, the panel repeatedly instructed the parties that New York law governed the claim for specific performance; (undisputed) (Terra/DTH Br. 14-15)

- Peppertree/AMLQ's initial demands for arbitration only sought to enforce the Torrecom Offer; (undisputed) (Terra/DTH Br. 9-10)

- The panel's First Partial Final Award made findings of disputed fact in favor of Peppertree/AMLQ without allowing Terra discovery; (PPT/AMLQ Br. 31-32)

  - That Peppertree/AMLQ's resort to arbitration on February 2, 2021, was best viewed as in furtherance of their rights to enforce their January 19, 2021 Sale Notice. (the sale notice which Peppertree/AMLQ did not seek to enforce until it amended its demand 5 months later); (undisputed) (Terra/DTH Br. 30)

  - That Peppertree/AMLQ did not know they would relinquish their right to enforce a sale by refusing to call (or attend) a board meeting even though the parties had negotiated and entered into a tolling agreement to extend the time to hold a

6

board meeting for the appointment of the investment bank; (PPT/AMLQ Br. 31)

- o That Peppertree/AMLQ could not have known it would waive its right to sale when it instituted arbitration prior to the expiration of the Company's deadline to appoint an investment bank for the January 19, 2021, sale notice; (PPT/AMLQ Br. 32)

- That Peppertree/AMLQ never sent a dispute notice for the January 19, 2021, sale offer to fulfill the SHA's pre-requisite to instituting arbitration. (undisputed) (Terra/DTH Br. 9)

- That the panel's November 12, 2021, order (the "November 12 Award") and the panel's March 15, 2022, order (the "March 15 Award") required non-parties to the arbitration to take certain actions in foreign countries; (PPT/AMLQ Br. 39-40)

- That Jorge Gaitan and Carol Echeverria were never employed by DTH, but rather subsidiaries of DTH: Proyectos Terrestres, S.A. ("Proyectos") and Desarrolladora de Tierras, S.A. ("Desarrolladora");[1] (*Id.*)

- That Proyectos and Desarrolladora are not parties to the arbitration, never made appearances in the arbitration, and are not signatories to any of the arbitration clauses which grant jurisdiction to the arbitral panel. In fact, DTH's subsidiaries have their own foreign dispute resolution clauses pursuant to independent agreements. (PPT/AMLQ Br. 39-40)

---

[1] To be exact, Gaitan was employed by Proyectos, and Gaitan and Echeverria were both independent contractors of Desarrolladora. (Terra/DTH Br. 16)

## ARGUMENT

### I. The First Partial Final Award Should be Vacated Because Terra was Denied its Right to a Fundamentally Fair Process

An arbitral award is subject to vacatur where the award was procured by a process which was fundamentally unfair under § 10(a)(3) of the FAA. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997). An arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id.* (quoting *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985).

#### A. It Was Fundamentally Unfair to Deny Terra the Opportunity to Discover Evidence to Support its Defenses

Peppertree/AMLQ do not dispute that the panel denied all of Terra's requests for discovery related to its affirmative defenses against a sale of the Company. Despite the relaxed procedural nature of arbitration hearings, arbitrators have a duty to ensure that each party has received relevant evidence in order to present its case. *See Home Indem. Co. v. Aff. Food Distribs., Inc.*, 1997 WL 773712 at *4 (S.D.N.Y. Dec. 12, 1997).

In response, Peppertree/AMLQ fail to present a single case where an arbitrator denied a party any discovery into its defenses before issuing the award—and then rejected those defenses on the merits. PPT/AMLQ Br. 33-35. In *Oracle Corp. v. Wilson*, the party seeking to vacate the award was denied one single

discovery request, which that party admitted was irrelevant to the issue the arbitrator had to decide. 276 F.Supp.3d 22, 31 (S.D.N.Y. 2017) (the party seeking vacatur also failed to raise any issue with the arbitrator's procedure until after an adverse award was rendered).

Here, Terra opposed the panel's *sua sponte* decision to bifurcate the proceedings because an evidentiary hearing into its defenses was necessary to resolve Peppertree's sale request. A969-973; A798-807. Then, following the panel's order to bifurcate the proceedings, Terra sought leave to serve discovery for its defenses and discussed the reasons each was necessary. A999-1012. And after the all-day oral argument, Terra made another submission outlining the reasons discovery was necessary to resolve the specific performance claim— because otherwise the panel would be forced to draw factual inferences on an incomplete record. SA0646-0648; *see also Lindsey v. Travelers Comm. Ins. Co.*, 636 F.Supp.3d 1181, 1187 (E.D. Cal. 2022). The panel ultimately did just that: it drew factual inferences adverse to Terra on an incomplete record which denied Terra any opportunity to discover relevant evidence.

Peppertree/AMLQ's cases on the issue of denying discovery only stand for the proposition that an arbitrator can decide to bifurcate proceedings. *See, e.g.*, *Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*, 211 F. Supp. 3d 505 (E.D.N.Y. 2016) (confirming award where arbitrator excluded certain evidence

that was irrelevant to the first phase of a bifurcated proceeding); *see also Duferco, S.A. v. Tube City IMS, LLC*, 2011 WL 666365, at *5 (S.D.N.Y. Feb. 4, 2011) (same). It is undisputed that an arbitrator can bifurcate a proceeding, but it cannot then deny a party discovery relevant to the first phase of the proceeding.

Terra's discovery requests were relevant to the issue of specific performance. Terra's December 9, 2021, response meticulously detailed the factual disputes which precluded specific performance. SA0646-0652. Terra alleged, among others, that Peppertree/AMLQ:

- refused to build towers for years to depress the Company's value;

- interfered with Terra's multiple attempts to sell the Company to third-parties, so that Peppertree/AMLQ could sell the Company to itself at a reduced price;

- attempted to block Terra/DTH from competing in the market after the Company had been sold;

- tried to sell the Company to Torrecom Partners LP, which was a Goldman affiliate—a breach of the SHA; and

- rejected Terra's offer to buy out the minority shareholders in bad faith in an attempt to force Terra out of the telecom market.

*Id*.; *see also* PPT/AMLQ Br. 34-35.

10

**B. It Was Fundamentally Unfair for the Panel to Instruct the Parties to Prepare Their Cases in Accordance With New York law, and then Disregard New York Law**

Peppertree/AMLQ concede that the panel instructed the parties that New York law controlled the issue of specific performance, that the parties prepared their cases in accordance with New York law, and that all of the parties' briefing strictly cited to New York law. Peppertree/AMLQ concede as well that during oral argument on the specific performance claim the panel changed the standard under which it would consider the specific performance claim. PPT/AMLQ Br. 27-28. This last-second pivot by the panel deprived Terra of their right to be heard "at a meaningful time and in a meaningful manner." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (citing *Matthews v. Eldrige*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

**1. A "Post-Hearing Brief" on Discovery Does not Remedy the Fact that Terra had Prepared Its Entire Case to Conform to New York Law**

Peppertree/AMLQ argue that Terra was permitted two post-hearing briefs to address the panel's decision to ditch New York law and analyze the specific performance claim under AAA Rule R-47. PPT/AMLQ Br. 28. What Peppertree/AMLQ title a "post-hearing brief" was actually a response to Peppertree/AMLQ's motion for expedited ruling on the issue of specific performance. SA0646. Regardless, a post-hearing brief cannot remedy the panel's

11

decision to make Terra prepare its case without discovery or knowledge of what framework the panel would apply to the specific performance claim.

Instead, Terra prepared its case as if New York law controlled. Terra justified its entitlement to discovery as if New York law controlled. Terra had decided what evidentiary and legal proffers to make as if New York law controlled. Terra drafted their briefs as if New York law controlled. And, even leaving the December 1, 2021, hearing, the panel still had not clearly ruled that AAA Rule R-47 controlled. "Post-hearing briefs" cannot remedy this unfairness.

The summary order issued by the Second Circuit in *NYKCool A.B. v. Pacific Fruit, Inc.*, is distinguishable because the question of whether the panel could impose joint and several liability was a side issue which the parties had a full opportunity to brief. 507 F.App'x 83, 88-89 (2d Cir. 2013) (Summary Order).

The question is not whether the panel had the power to order specific performance under AAA Rule R-47, but rather, what standards apply in granting specific performance. The parties' agreements all specify the substantive law of New York applied. The parties agreed after the initial administrative conference that New York law applied. The panel instructed – initially – that New York law would apply until the panel decided that no law would apply because they had broad equitable powers under Rule 47(a), and they did so without providing Terra

a meaningful opportunity to prepare and present its case with knowledge of that standard.

> **2.      The Panel's Decision to Rule in the Alternative that New York Law Also Supported Specific Performance was only an Attempt to Protect its Award**

Peppertree/AMLQ argue that Terra mischaracterizes the First Partial Final Award because in addition to granting specific performance pursuant to AAA Rule R-47, it also found Peppertree/AMLQ met the standard for specific performance under New York law. PPT/AMQ Br. 29. But if the panel felt this way, why would it have granted Peppertree/AMLQ's claim for specific performance under an entirely different framework? One which no party had asked for or had any opportunity to prepare?

The panel drew findings of disputed fact in favor of Peppertree/AMLQ while denying Terra any discovery to rebut the panel's inferences. This decision was in manifest disregard of "well-defined, explicit, and clearly applicable" law. *Schwartz v. Merrill Lynch*, 665 F.3d 444, 452 (2d Cir. 2011). The panel did so because the panel knew New York law required the resolution of disputed factual issues—which meant granting Terra discovery.

As put by Peppertree/AMLQ, "Terra was obligated to present the Tribunal with case law or authority demonstrating that merely asserting any one of Terra's affirmative defenses is sufficient to preclude specific performance." PPT/AMLQ

Br. 30-31. Terra did exactly that. Terra briefed the panel on two issues (1) that equitable defenses are a matter of substantive law the panel must follow; and (2) that Terra must receive discovery to substantiate its affirmative defenses. *See, e.g.*, A1764-1766; A845 ¶ 57 (equitable defenses are substantive law); A969-973 (discovery is necessary for a party to establish affirmative defenses to equitable remedies).

The panel disregarded both of Terra's submissions. The panel denied Terra all discovery to support its defenses because it regarded them as procedural principles that did not bind the panel. A844 ¶ 57. The panel's award then goes into painstaking detail about why Terra's affirmative defenses to New York law are *factually* deficient. PPT/AMLQ Br. 31-32. Drawing inferences of disputed fact against Terra without allowing discovery was fundamentally unfair. The First Partial Final Award should be vacated.

## II.    The November 12 Award and March 15 Award should be vacated because the arbitrators exceeded their power.

Under the Federal Arbitration Act, the court "may make an order vacating the award … where the arbitrators exceeded their powers …." 9 U.S.C. § 10(a)(4).

### A.    The November 12 Award and the March 15 Award were Sufficiently Final.

On November 12, 2021, the panel issued an order which required that "DTH immediately restore Jorge Gaitan and Carol Echeverria to the Company positions

14

they occupied as of March 19, 2021. A1185-118.[2] Although the panel dubbed the November 12 Award as "interim," there was no indication that the effects of the order would cease upon the arbitration's completion. The only further proceedings the order contemplated were "on the sufficiency of compliance with this Order, or the consequences of any non-compliance." *Id.*

The March 15 Award thereafter purported to compel compliance by way of publication of a public notice retracting a prior published disclaimer of any association of Jorge Gaitan and Carol Echeverria with DTH subsidiaries, their local employers in Central America. A1687-94

The plain terms of the November 12 Award required DTH to re-appoint Gaitan and Echeverria to their positions in the Company, and for DTH's subsidiaries to rehire them. The panel's order of equitable relief by way of a mandatory injunction is a partial award subject to judicial review. *See S. Seas Nav.*

---

[2] Peppertree/AMLQ argue in a footnote that DTH is not a shareholder of the Company and therefore has no authority to make decisions for the Company. PPT/AMLQ Br. n. 6. That is entirely true. Yet, Peppertree/AMLQ continue to try and enforce an order against DTH's subsidiaries for their failure to "restore Jorge Gaitan and Carol Echeverria to the[ir] Company positions." By Peppertree/AMLQ's own position, it is impossible for DTH's subsidiaries to comply, they cannot appoint persons to a position in a company they have no control over. This highlights the arbitral tribunal's jurisdictional patch-job to try and craft an order controlling non-party employment relationships in its November 12 Award which is later extended by the March 15 Award mandating a published retraction.

15

*Ltd. of Monrovia v. Petroleos Mexicanos of Mexico City*, 606 F.Supp. 692, 694 (S.D.N.Y. 1985).

Peppertree/AMLQ posit three reasons the November 12 Award and the March 15 Award are not partial final awards.

*First*, that the panel specifically titled the order "interim" and entered its ruling pursuant to AAA Rule R-37. PPT/AMLQ Br. 37. The panel's naming decision is given little weight, if any, in a court's analysis of whether arbitral relief is final. *See S. Seas Nav. Ltd. of Monrovia*, 606 F.Supp. at 693-94. It is the substance and effect of the award, not "superficial technicalities." *See Publicis Comm. v. True North Comms., Inc.*, 206 F.3d 725, 730 (7th Cir. 2000).

Rather than titling decisions, the Court should look to the expressed statements of the panel provided in its March 15, 2022, order. A1687-1701 ("March 15 Award"). The panel found that compliance with interim relief under Rule R-37 is to be addressed by judicial enforcement thereof, stating: "to us this is a strong suggestion that if enforcement of interim relief is potentially required, the preferred if not exclusive method is to make an award so that judicial enforcement will become obtainable." March 15 Award ¶ 3.

*Second*, that the panel's November 12 Award expressly contemplated further proceedings, so the panel did not relinquish jurisdiction to the courts. PPT/AMLQ Br. 37. However, the November 12 Award only reserved jurisdiction for the panel

16

to monitor compliance—which as discussed below it could not do because the panel was *functus officio*—and to award fees and costs.[3] Those reservations do not change the finality of the November 12 Award. *See Matter of Arb. Between Advest, Inc. and Asseoff*, No. 92 Civ. 2269 (KMW), 1993 WL 119690, at *6 (S.D.N.Y. April 14, 1993); *cf Ward v. Ernst & Young U.S. LLP*, 468 F.Supp.3d 596, 604-605 (S.D.N.Y. 2020). In fact, the March 15 Award specifically refused to revisit the terms of the November 12th award, denying Peppertree/AMLQ's request to "re-iterate, itemize or supplement the [November 12] Order." March 15 Award ¶ 8.

*Third*, the alleged removal of the Company's management and the publication by DTH's subsidiaries announcing their dissociation from certain former employees and contractors is collateral to the matters the parties intended to arbitrate. PPT/AMLQ Br. 37. But it is precisely because the November 12 Award and the March 15 Award resolved issues independent and separate from those remaining in the arbitration that the November 12 Award and the March 15 Award are sufficiently final. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d. Cir. 2007); *British Ins. Co. of Cayman v. Water Street Ins. Co., Ltd.*, 93 F.Supp.2d 506, 514 (S.D.N.Y. 2000).

---

[3] The November 12 Award also stated that any compliance proceedings would be joined to the December 1, 2021 hearing. Which never occurred there.

The November 12 Award and March 15 Award are therefore sufficiently final to be subject to judicial review.

## B. The Panel Exceeded its Authority by Addressing Rights and Obligations of Third Parties.

"[A]n arbitration panel may not determine the rights or obligations of non-parties to the arbitration." *Nationwide Mut. Ins. Co v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). The November 12 Award and March 15 Award require DTH's subsidiaries, Proyectos and Desarrolladora, to rehire and publicly reassociate with Gaitan and Echeverria. It is undisputed that Proyectos and Desarrolladora were non-parties to the arbitration, made no appearance before the panel, and were not a signatory to the arbitration clauses granting jurisdiction to the arbitrators.

Instead, Peppertree/AMLQ argue that there is a legal loophole—an arbitral panel can overcome well-defined jurisdictional constraints simply by ordering a party before them to cause the non-party to act. PPT/AMLQ Br. 39. If this were true, then a party's decision to enter an arbitration agreement would effectively submit every other entity (or person) that a corporation or its officers have control over to that arbitration clause—no matter how remote of a relationship.

But neither of the cases Peppertree/AMLQ cite involved an award ordering a party to direct a non-party to act. In *Soleimani v. Andonian*, one party was ordered to pay another and liquidate the assets of a company so its assets could be distributed among the shareholders. No. 21 Civ. 1018 (GWH), 2022 WL 74827,

18

*5-7 (S.D.N.Y. Mar. 10, 2022). In *Decorative Panels International, Inc. v. International Ass'n of Machinists and Aerospace Workers Local Lodge W-260*, a party was ordered to reinstate employees as required by a collective bargaining agreement. 996 F.Supp.2d 559 (E.D. Mich. 2014). Both courts explicitly upheld the awards because they did not adjudicate the rights of third parties or require those third parties to take any acts.

A non-party cannot be compelled to arbitrate absent evidence of a "clear and unmistakable intent" to arbitrate. *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 661-62 (2d Cir. 2005). DTH's subsidiaries are beyond the panel's authority because they never consented to the panel's authority. *See id*. To the contrary, the Company's subsidiaries and DTH's subsidiaries each entered into their own separate operating contracts, which contained separate dispute resolution clauses not subject to the AAA rules. A937 § FOURTEEN; A1195-1196.

The panel cannot get around that lack of authority simply because DTH is a holding company. PPT/AMLQ Br. 40. Peppertree/AMLQ's cases holding that a holding company "cannot be permitted to do through its subsidiaries what it is otherwise prohibited from doing on its own behalf" do not say that a subsidiary can be ordered to do something the holding company cannot—and none were in the arbitration context. *See Cablevision Sys. Corp. v. Can Muneyyirci*, No. 90 Civ.

19

2997 (RJD), 1995 WL 362541 (E.D.N.Y. June 2, 1995); *Int'l Bus. Machines Corp. v. Comdisco, Inc.*, No. 91 Civ. 6777, 1993 WL 155511 (N.D. Ill. May 10, 1993).

Whether DTH's subsidiaries could be compelled to arbitrate due to an agency relationship is irrelevant, because Proyectos and Desarrolladora are not signatories to the SHA or Development Agreement, and that agency analysis cannot be performed during confirmation proceedings. *See Orion Shipping & Trading Co v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 300-01 (2d Cir. 1963). Peppertree/AMLQ entirely ignore this binding case law.

Moreover, Peppertree/AMLQ's cases upholding binding injunctions on non-parties are distinguishable because they rely on Fed. R. Civ. P. 65(d)(2), which provides that injunctions issued by Article III courts may bind certain non-parties. *See NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009). The panel is not an Article III court and Rule 65(d)(2) does not apply to the arbitration. "The tendency to analogize arbitration to trial, and arbitrator to judge, should … be avoided." *See Feingberg v. Katz*, No. 01 Civ. 2739 (CSH), 2003 WL 260571, *6 (S.D.N.Y. Feb. 5, 2003). An arbitrator has no independent adjudicatory power beyond that granted in the parties' agreement, and neither the Shareholders Agreement nor the Development Agreement covers employment decisions of

20

DTH's subsidiaries. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Grp.*, 559 U.S. 662, 682-83, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).

### C. The Panel Exceeded its Authority Trying to Compel Compliance with the November 12 and March 15 Awards.

Because the November 12 Award and the March 15 Award are in fact a final awards, the *functus officio* doctrine restricts the power of arbitrators to reconsider, compel compliance, or supplement its awards. An award which violates this doctrine should be vacated. *See, e.g.*, *Trade & Trans., Inc. v. Nat'l Petro. Charters Inc.*, 931 F.2d 191 (2d Cir. 1991); *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1004 (7th Cir. 2000); *Domino Group, Inc. v. Charlie Parker Mem. Foundation*, 985 F.2d 417, 420 (8th Cir. 1993); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 333-35 (3d Cir. 1991); *WMA Sec., Inc. v. Wynn*, 105 F.Supp. 2d 833, 835-36 (S.D. Ohio 2000), *aff'd*, 32 F. App'x 726 (6th Cir. 2002).

Because the panel violated *functus officio* doctrine, the March 15 Award should also be vacated.[4]

---

[4] The March 15 Award attempted to force Proyectos and Desarrolladora to take certain acts (publish public notices), and therefore must also be vacated for attempting to determine the rights of non-parties under 9 U.S.C. § 10(a)(4).

21

## CONCLUSION

For the foregoing reasons, Terra and DTH respectively request this Court enter and order (1) vacating the FPFA; (2) finding the November 12 Award and March 15 Award are partial awards subject to judicial review; and (3) vacating the November 12 Award and March 15 Award.

Dated: August 22, 2023                    Respectfully submitted,

/s/ Juan J. Rodriguez
JUAN J. RODRIGUEZ
CAREY RODRIGUEZ, LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Tel: (305) 372-7474
jrodriguez@careyrodriguez.com

*Counsel for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limits of Fed. R. App.

P. 32(a)(7) because this document contains fewer than 6,500 words.

2.     This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in proportionally spaced typeface in 14-

point Times New Roman.

/s/ Juan J. Rodriguez
Juan J. Rodriguez

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using appellate CM/ECF system on August 22, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Juan J. Rodriguez
Juan J. Rodriguez